CATHERINE MARTIN V. ANTHONY MARTIN.

FILED APRIL 5, 1906. No. 14,223.

1. **Instructions:** PROCEDURE. All instructions should be read to the jury in open court, and where, after retiring, the jury desire further instructions on the law of the case, they should be brought into court, there to receive such instructions. If, in answer to a request, further insructions are sent to the jury room by the bailiff in charge, the record should show the consent of the parties to this procedure.

2. **Adverse Possession.** One who has acquired absolute title to land by adverse possession for the statutory period does not impair his title by thereafter paying rent to the owner of the paper title.

3. **Deed:** ACKNOWLEDGMENT. As between the parties a deed of real estate, not a homestead, is good without being acknowledged.

4. ———: DELIVERY. A delivery of a deed by the grantor to a third person for the grantee, with directions to deliver it to such grantee, constitutes a sufficient delivery of a deed of conveyance.

ERROR to the district court for Thayer county: LESLIE G. HURD, JUDGE. *Affirmed.*

*M. S. Gray, J. F. Peters* and *Mockett & Mattley,* for plaintiff in error.

*Morning, Berge & Ledwith, M. H. Weiss* and *T. C. Marshall, contra.*

DUFFIE, C.

Catherine Martin, the plaintiff in error and plaintiff in the court below, brought this action in ejectment against her son Anthony Martin to recover possession of the northwest quarter of section 17, township 4, range 2 west, Thayer county, Nebraska. Michael J. Martin, the deceased husband of the plaintiff, was the patentee of this land and in his will, which was duly probated in the state of Pennsylvania where he lived and died, and also in Thayer county, Nebraska, where the land is situated, he

gave to the plaintiff a life estate therein. The petition is the usual petition in ejectment, and the answer, in addition to a general denial, sets up the following defenses: That in February, 1878, the land, which was then worth not to exceed $500 and was wholly unimproved, was owned by Michael J. Martin, the father of the defendant; that about that date Michael J. Martin, who was then located in Pennsylvania, proposed to the defendant that he go west and locate, and, as an inducement thereto, promised defendant the land described in the petition on the condition only that the defendant would locate in the state of Nebraska, and remain and establish himself, and improve the land in question; that about that time the said Michael J. Martin made and executed to the defendant a deed to said land and conveyed the same to the defendant in fee simple, which deed, before its delivery to the defendant, fell into the hands of one John J. Martin, who concealed it for many years, and then, as a condition of its delivery, undertook to extort money or property from the defendant. It is further alleged that the defendant accepted the proposal of his father, and left the state of Pennsylvania and went to Thayer county, Nebraska, in February, 1878; entered into possession of the land in dispute, and has ever since been in the actual, open, exclusive, continuous, hostile, notorious and adverse possession of the same; that in 1878 he broke up and put the land in cultivation, and has ever since cultivated the same, planted fruit and ornamental trees thereon, and that the same is in a high state of cultivation; that his father, during his lifetime, made no claim of ownership, nor did he demand rent for said land, and that since his father's death in 1886 the plaintiff has never demanded possession from the defendant nor rent for use of the premises. He alleges that he has acquired title by adverse possession, that the plaintiff's action is barred by the statute of limitation and asks to have his title quieted. The reply was a general denial. The jury returned a general verdict for the defendant, and a finding that at the date

of the commencement of the action defendant was the owner and entitled to the possession of the premises. The jury also returned certain special findings to the effect, first, that in January, 1878, Michael J. Martin promised and agreed to give the defendant the land in dispute on the condition above set out, and that the defendant, acting under such agreement, entered into the actual possession of said land and performed the condition of said agreement; second, that Michael J. Martin and his wife, Catherine, in January, 1878, made and executed a deed to the land in dispute to the defendant, that said deed was delivered to John J. Martin for the purpose of being delivered to Anthony Martin, the defendant, and that Michael J. Martin intended to have it so delivered; third, that the defendant, for more than ten years prior to the commencement of the action, had been in actual adverse possession of the land under a claim of ownership. Judgment was entered on the verdict and special findings of the jury in favor of the defendant and the plaintiff has brought the case here for review.

After the jury had been instructed and had retired to consider their verdict, they sent the following communication to the court by the bailiff having them in charge: "Is a will made in one state in force and effective in another state, the will having been probated in the state in which it was executed?" In relation to this the record contains the following: "And which said request and question being presented in open court, all parties being represented by counsel, the same was by the court called to their attention, and, upon due consideration whereof, the court, upon his own motion and in answer to the above question and request of the jury, gave the following instruction in writing, said instruction being sent to the jury room by the court through the bailiff, to wit: 'The jury is instructed, in answer to the attached question, that the probate of a foreign will in this state is the statutory and legal method of proving the facts creating a right of inheritance, and, when probated here in Ne-

braska, all the rights thereunder relate back to the time when the same became effective in the original jurisdiction;' to which act of the court, in the giving of such supplemental instruction, the plaintiff then and there duly excepted."

The method of giving this instruction is assigned as error. It is urged that our statute requires all instructions to be in writing and to be read by the court to the jury, and much force is placed upon section 287 of the code, to the effect that if the jury, after they retire, desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court, where the information upon the point of law shall be given. The precise question here presented has never before been raised and passed on by the court. Aside from the requirements of our statute, it is a general principle, which obtains everywhere, that all instructions to the jury shall be delivered in open court. 11 Ency. Pl. & Pr. 275; *Hopkins v. Bishop,* 91 Mich. 328, 51 N. W. 902. We do not mean to say that, where, as often happens, the court is engaged in a trial when a request like that in question is presented, he cannot, by consent of parties, send his answer to the jury by the bailiff in charge thereof; but the record ought to show that consent was given, in order that no controversy may thereafter arise. The exception taken by the plaintiff is not clear and definite, the language being, "to which act of the court, in the giving of such supplemental instruction, the plaintiff then and there duly excepted." It is possible that this should be considered as an exception to the method of instructing the jury, instead of to the substance of the instruction given, and if it be construed as an exception to the method there can be no doubt that the court was in error in proceeding as it did. The error, however, was without prejudice, in view of the special findings of the jury. Not only did they find that the defendant had been in the actual adverse possession of the premises for more than ten years prior to the commencement of the action, but

they found also that the plaintiff and her husband, dur-
ing his lifetime, made and delivered to the defendant a
deed of the premises conveying to him the fee title.   In
this condition of the case, any error committed by the
court in the manner of instructing the jury upon other
points in the case is immaterial.

Objection was made to the introduction of the deed of
Michael J. Martin to the land in controversy, for the
reason that the same was acknowledged before a justice
of the peace, and no certificate was attached, as required
by statute, showing the official character of the justice.
The signatures of the grantors were proved.   It is familiar
law that, except in the conveyance of a homestead, the
acknowledgment is not essential to the validity of a
deed.   It only goes to the right to have the deed recorded.
As between the parties a deed without any acknowledg-
ment is good.

Complaint is made of the refusal of the court to give
the following instruction asked by the plaintiff: "You are
instructed that if you find from the evidence that the
defendant did, at any time within ten years next preceding
the filing of this suit, to wit: November —, 1903, recog-
nize or acknowledge the legal estate and right of posses-
sion of the plaintiff, in any manner, by the payment of
rent for the use of said land to plaintiff or to any other
person, or that the defendant recognized the right of plain-
tiff or any other person, in any manner whatsoever, by
the payment of rents, or any acts of the defendant in con-
nection with said land, or the use thereof, inconsistent to
the claim of defendant, that he is the owner, then the
claim of defendant that he is the owner of said land by
adverse possession cannot be sustained, and you must find
the legal estate and right of possession to be in plaintiff."
In argument it is insisted that any act of the defendant
recognizing ownership by the plaintiff within ten years
prior to the commencement of the action defeats his claim
of title to the land by adverse possession.   There was evi-
dence from which the jury might have found that the de-

fendant, at the request of his mother, paid rent to his sister within ten years prior to the commencement of the action, but the evidence was conclusive that the defendant had entered into possession of the land in 1878 or 1879, and held actual possession from that time to the date of the trial. If, as he contends, and as the jury were warranted in finding, his possession was under a claim of ownership, then his title had accrued and become perfect many years prior to the commencement of the action. The law is well settled that recognition of title in the former owner by one claiming adversely, after he has acquired a perfect title by adverse possession, will not divest him of title. In *Riggs v. Riley*, 113 Ind. 208, 15 N. E. 253, it is held that, where, by open and continuous adverse possession of land under claim of ownership for over 20 years by a person and his grantors, he has gained title thereto in fee, payment of rent by him thereafter for two years to the person having the paper title, and a subsequent survey procured by the latter without objection on the part of the former, will not defeat the title already gained by adverse possession. In *School District v. Benson*, 31 Me. 381, 52 Am. Dec. 618, it is said: "But the title, obtained by disseizin so long continued as to take away the right of entry, and bar an action for the land by limitation, cannot be conveyed by a parol abandonment or relinquishment, it must be transferred by deed." And in *London v. Lyman*, 1 Phila. (Pa.) 465, it is said: "Adverse possession for twenty-one years is a title, it cannot be defeated by a subsequent recognition of a previous title, which, originally rightful, has lost that character by a delay to enforce it." There was no error in refusing the instruction. Other instructions to the effect that the jury must find the defendant's possession to be actual, open, continuous and adverse for at least ten years next immediately preceding the commencement of the action were refused, but as the court had instructed to the same effect on its own motion, and also that the burden was upon the defendant to establish the adverse character of his holding, there

was no need of repeating the same and no error in refusing to do so.

In its third instruction the court said to the jury: "The third defense interposed by the defendant is that Michael J. Martin, now deceased, and his wife, Catherine Martin, conveyed the premises to him by deed of general warranty, a copy of which is attached to the petition, marked "Exhibit A," and that by reason and by virtue of said deed he became seized of the premises and is owner thereof." In her brief the plaintiff says: "As we have pointed out, this is contrary to the answer of the defendant, is contrary to the statement of the case by the court, and is not claimed by the defendant in instructions asked by him of the court. The answer simply pleads two defenses: First, a parol agreement to convey the land; and, second, the statute of limitations. The deed was simply plead as an incident to the parol agreement and was not set up as a defense, and it has never been claimed by the defendant in this case that the deed was delivered." The plaintiff must have overlooked the fourth paragraph of the defendant's answer, as follows: "In pursuance of the proposition above set forth, the said Michael J. Martin, at or about the time last aforesaid, made and executed to this defendant a deed to the land described in plaintiffs' petition, a copy of which deed is hereto attached, marked "Exhibit A," and made a part hereof, and thereby conveyed to this defendant an absolute title in fee simple to the premises described in plaintiff's petition, which deed as aforesaid, before its delivery to this defendant, fell into the hands of one John J. Martin, who concealed it for many years and then, as a condition of its delivery, undertook to extort money or property from this defendant as a condition precedent to the delivery of said deed." A pleading alleging that a deed was made and executed sufficiently pleads a delivery, *Brown v. Westerfield*, 47 Neb. 399, and there was evidence to sustain a finding by the jury that the deed was actually delivered by the grantors to John J. Martin, with directions to deliver it to the

defendant. That this is the theory upon which the case was tried is evident from the third instruction of the court, in which he informed the jury that, in order to be effective to pass title, a deed must be delivered, and that a delivery must be shown by a fair preponderance of the evidence; and if the deed was delivered by Michael J. Martin to defendant Anthony Martin, either by himself or by some one authorized and directed to do so, it would be sufficient.

It is insisted that the judgment and verdict are not supported by the evidence. The witnesses contradicted each other on many material points and there are letters in the record, signed by the defendant, addressed to his mother and other relatives, which are not fully and clearly explained. It is quite well established that the defendant cannot write except to sign his own name, and that these letters were written by his wife, some of them without his knowledge or at least not at his dictation or direction. These letters point quite clearly to a recognition of his mother's title, and the explanation is, as above stated, that they were written without his direction or consent. There is also evidence of his payment of rent, but not before the statute of limitations ran in his favor, provided, as found by the jury, he has asserted title to the land in question since his occupancy in 1878 or 1879. On the other hand, there is evidence tending to show that he visited his father just prior to his death in 1886, and was then told that this land was his, and that the deed had been delivered to John J. Martin for delivery to him, and that he received letters to the same effect directing him to request delivery of the deed from his brother John. There is also evidence tending to show that the plaintiff had stated, after the dismissal of another action involving title to this land, that they had always intended this tract for the defendant; that the land was his and that she would not have brought an action had she not been persuaded by some of her other children. Probably we would have been better satisfied with a verdict for the plaintiff, but

from the conflicting and contradictory testimony given by witnesses who were, to a certain extent, interested in the result, some of whom, we regret to say, must have testified knowingly to facts which had no existence, as the conflicting statements could not possibly have been through error or forgetfulness on their part, it is a case in which the facts and the credibility of the witnesses are particularly suited for the determination of a jury, who saw and heard the witnesses and who were more or less acquainted with many of them. Under the rule so well and long established, that this court will not set aside the verdict of a jury found on conflicting evidence, regardless of our own opinion of what the verdict should be, we cannot interfere with the findings of the jury.

The petition in error contains more than 100 assignments. We cannot attempt to notice them all, and many of them relate to the same matter. The special findings, we think, dispose of the matters material to a disposition of the case. That there were some rulings on questions of evidence which were technically incorrect may be true, but these errors could have no weight with the findings of the jury on the question of the making and delivery of a deed to the premises by defendant's father, and the finding on that question is conclusive of the case.

We recommend an affirmance of the judgment.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.