ROUND MOUNTAIN LUMBER & COAL CO. *v.* BASS *et al.*

(*Knoxville.*    September Term, 1916.)

1. **ADVERSE POSSESSION.**    Color of title.    Abandonment of possession.    Effect.

Where land is granted to certain persons, seven years' adverse continuous possession by others under color of title would pass title just as if a valid deed had been made, and subsequent relinquishment of possession could not divest the title.    (*Post,* pp. 693, 694.)

Cases cited and approved:    Schall v. Williams Valley R. Co., 35 Pa., 191;    School District v. Benson, 31 Me., 381;    Austin v. Bailey, 37 Vt., 219;    Summerfield v. White, 54 W. Va., 311;    Branch v. Baker, 70 Tex., 190;    Parham v. Dedman, 66 Ark., 26;    Tennessee C., I. & W. R. Co. v. Linn, 123 Ala., 112;    Sage v. Rudnick, 67 Minn., 362;    Allen v. Mansfield, 82 Mo., 688;    Martin v. Martin, 76 Neb., 335;    I. C. R. R. Co. v. Wakefield, 173 Ill., 564;    Carroll v. Rabberman, 240 Ill., 450;    Riggs v. Riley, 113 Ind., 208;    Phy v. Hatfield, 122 Tenn., 694;    Boles v. Smith, 1 Shan. Cas., 149.

2. **ADVERSE POSSESSION.**    Defenses.    Possession.    Sufficiency.

Assuming that an adverse possessor under claimed color of title by tax deed acquired title to a small tract before abandoning possession, the true owner, to defeat such title, must have had possession during the adverse party's possession of the specific tract, and its possession of a number of adjacent tracts which with the one involved had been thrown into one large tract was not sufficient;    the general rule being that, where there are interlapping grants, there must be actual possession of the interlap, to start adverse possession.    (*Post, pp* 694—697.)

Cases cited and approved:    Lieberman v. Clark, 114 Tenn., 117;    Elliott v. Coal & Coke Co., 109 Tenn., 745;    Napier v. Simpson, 1 Tenn., 448;    Talbot v. McGavock, 9 Tenn., 269;    Hightower v. Smith, 15 Tenn., 500;    Smith v. McCall's Heirs, 21 Tenn., 163;    Stewart v. Harris, 28 Tenn., 714;    Tilghman v. Baird, 34 Tenn.,

196; Waddle v. Stuart, 36 Tenn., 534; Creech v. Jones, 37 Tenn.; 631; Snoddy v. Kreutch, 40 Tenn., 302; Foster v. Grizzle & Hutchins, 41 Tenn., 534; Boles v. Smith, 1 Shan. Cas., 149; Gainus v. Bowman, 57 Tenn., 602; Hunter v. Bills, 3 Shan. Cas., 97; Coal Creek Mining Co. v. Heck, 83 Tenn., 514; Byrd v. Phillips, 120 Tenn., 14; Wright v. Hurst, 122 Tenn., 662.

3. ADVERSE POSSESSION. Defenses. Possession. Sufficiency.
The owner of several contiguous tracts may consolidate them all under one boundary through a proper conveyance or title paper and obtain the benefit of the rule that actual possession on the part of the land extends by construction of law to the full limits of the description. (*Post, pp.* 697—699.)

4. ADVERSE POSSESSION. "Possession."
Possession of land is a fact composed of act and intention, as, for instance, a house occupied or kept locked or a fenced field with the inclosure maintained, but the act of a casual trespasser does not constitute possession. (*Post, pp.* 699—701.)

Cases cited and approved: Camp v. Riddle, 128 Tenn., 294; Stewart v. Harris, 28 Tenn., 714.

Case cited and distinguished: Gainus v. Bowman, 57 Tenn., 600.

5. ADVERSE POSSESSION. Possession of part of boundary. Separate tracts.
The act of having two tracts conveyed by separate descriptions indicates a purpose to hold them apart as separate tracts and to undertake the legal consequences. (*Post, pp.* 699—700.)

6. ADVERSE POSSESSION. Possession of part of boundary. Separate tracts.
Where several tracts hitherto separate and distinct are united under one boundary by an appropriate conveyance, existing rights of third parties are not disturbed thereby, and as to them the tracts will be considered still separate; so that possession of one does not extend to the other as against such persons. (*Post, pp.* 701—707.)

Cases cited and approved: Hunter v. Bills, 3 Shan. Cas., 97; Hubbard v. Godfrey, 100 Tenn., 150; Smith v. Lorillard, 10,

Lumber & Coal Co. v. Bass.

Johns. (N. Y.), 338; Harker v. Birkbeck, 3 Bur., 1556; Jackson v. Harder, 4 Johns. (N. Y.), 202; Johnson v. Hazen, 2 Johns. (N. Y.) 22; Lund v. Parker, 3 N. H., 50; Newhall v. Wheeler, 7 Mass., 189; Cutts v. Spring, 15 Mass., 137; Cook v. Rider, 16 Pick. (Mass.), 188; Spurr v. Bartholomew, 2 Metc. (Mass.), 485.

Cases cited and distinguished: Slater v. Rawsom, 6 Metc. (Mass.), 439; Shrewsbury v. Smith, 14 Pick. (31 Mass.), 297.

7. **ADVERSE POSSESSION.** Sufficiency of holding. Time.

If a party without claim of right or color of title goes upon land the legal title to which is in another, upon abandonment of possession all of his rights ceased, and as against his heirs the legal owner could show possession by holding a contiguous tract within the same general boundary on which possession was maintained. (*Post, pp.* 707, 708.)

8. **ADVERSE POSSESSION.** Color of title. Validity of instrument.

A tax deed purporting to convey whatever interest the tax collector could convey in real estate supposed to be owned by one C. B., who was only the widow of the former real owner, and which provided that it should be good as between the parties, did not purport to convey an estate in fee and was not color of title, though a tax deed, even if void, would be good as color of title if it purported to convey a fee. (*Post, pp.* 708, 709.)

Cases cited and approved: Iron Co. v. Schwoon, 124 Tenn., 176; Stewart v. Harris, 32 Tenn., 656; Sampson v. University, 32 Tenn., 600; Love v. Shields, 11 Tenn., 405; Stovall v. Austin, 84 Tenn., 700; Ferguson v. Quinn, 97 Tenn., 46.

Code cited and construed: Sec. 641 (1858).

9. **ADVERSE POSSESSION.** Sufficiency of possession. Holding other tract.

As to bar trespassers or intruders, possession of one parcel of a twelve thousand acre tract is sufficient, though it was not upon the specific two hundred-acre tract embraced therein on which such trespassers entered. (*Post, pp.* 709—711.)

136 Tenn.—44

10. **FORCIBLE ENTRY AND DETAINER. Scope of inquiry. Title. Possession.**

Possession being the foundation of an action of forcible entry and detainer, the question of title is only incidental, and if the complainant proves possession, the defect, if any, in his title, is not available to the defendant. (*Post, pp.* 711, 712.)

11. **FORCIBLE ENTRY AND DETAINER.   Parties.  Tenants.**

Under Shannon's Code, section 5118, providing that the legal heir or representative of one who might have been plaintiff, if alive, may bring the suit after his death, where forcible entry and detainer was brought by the owner, and not the tenant, but after the tenant's death his heirs were made parties plaintiff, the action was properly brought. (*Post, pp.* 711, 712.)

Case cited and approved:  Jones v. Perry, 18 Tenn., 59.

Code cited and construed:  Sec. 5118 (S.).

12. **FORCIBLE ENTRY AND DETAINER.   Parties.  Tenants.**

Where an order permitting amendment to bring in necessary parties plaintiff as heirs of a deceased person who should have been plaintiff recited that the persons named in fact were the deceased's heirs, and no objection was made to it, inquiry whether They were the heirs is precluded. (*Post, pp.* 712—714.)

---

FROM SCOTT.

---

Appeal from the Chancery Court of Scott County. —Hugh G. Kyle, Chancellor.

E. G. Foster, Scott & Anderson and Wright & Jones, for appellant.

York & Pemberton and Fowler & Fowler, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant brought an action of forcible entry and detainer against the defendants in the chancery court of Scott county. The bill describes a consolidated body, composed of many previously distinct tracts of land, but all embraced in one deed, and under one general boundary, both in the conveyance by complainant's immediate vendor, and the conveyance to the latter by his own vendor. The allegation was, in substance, that the defendants had entered upon this land, and constructed a building and were taking the rents. The consolidated tract embraces about 12,000 acres. The defendants answered, disclaiming as to all of the land except one tract of 200 acres embraced in the general boundary, and known in the record as the Allen Hughett tract. They admitted that they had entered upon this, and denied that complainants had any possession of it at the time they (the defendants) made their entry. They also claimed title to this land as heirs at law of Allen Hughett, or as the tenants of such heirs.

It will contribute to a clear understanding of the controversy if we pause here and fully develop defendant's claim of title, since the settlement of that matter will have, as we think, a material bearing upon the relevancy of a considerable part of the evidence offered in support of complainant's possession.

It appears that on the 22d day of January, 1871, Allen Hughett received a deed from the tax collector of Scott county purporting to convey to him, as below stated, the two hundred acres. This deed recited a judgment rendered in the circuit court of that county in favor of the State on the 11th day of April, 1866, for $4.34¼ "for taxes, costs, and charges, due and unpaid for the year 1865 against a tract of land of which Carlinda Bowling is the reputed owner," describing the two hundred acres above mentioned; that an order of sale was issued on this judgment to E. Jeffers, the former tax collector of the county, on the 20th of April, 1866; that after advertising as required by law Jeffers sold the land publicly at the courthouse door on July 2, 1866, to John Hughett for the amount due, he being the highest and best bidder; that on the 22d of January, 1871, John Hughett assigned his bid to Allen Hughett; that "therefore I, John Thompson, tax collector in and for said county, and as the successor of E. Jeffers, former tax collector as aforesaid, in consequence of the premises, and for the consideration of the said sum of $4.31¼, do hereby transfer and convey the said tract of land above described to the said Allen Hughett and his heirs and assigns forever in as full and ample a manner as I as tax collector am authorized and required to do by law, but no further or otherwise." The deed was signed and executed by both John Thompson, the incumbent, and by E. Jeffers, his predecessor.

Assuming the validity of this deed, or assuming that it was at least color of title, Allen Hughett held possession of the land by himself and his tenants for more than seven years. After that time he abandoned the possession, and subsequently died.

It is contended by the defendants, who are his heirs, or the tenants of his heirs, that, having acquired title by seven years' adverse possession, the subsequent abandonment of the possession by Allen Hughett did not annul the title so acquired.

We have no knowledge, of any case exactly in point in this State, but, on principle, the conclusion is sound. The land having been previously granted by the State to other persons, seven years' adverse continuous possession under color of title would pass title, or toll the true title, operating just as if a valid deed had been made, and the subsequent relinquishment of possession could not divest the title. There are numerous cases in other jurisdictions that fully sustain this conclusion. *Schall* v. *Williams Valley R. Co.,* 35 Pa., 191, 203-206; *School District* v. *Benson,* 31 Me., 381, 52 Am. Dec., 618; *Austin* v. *Bailey,* 37 Vt., 219, 224, 225, 86 Am. Dec., 703; *Summerfield* v. *White,* 54 W. Va., 311, 322, 323, 46 S. E., 154; *Branch* v. *Baker,* 70 Tex., 190, 7 S. W., 808; *Parham* v. *Dedman,* 66 Ark., 26, 29, 30, 48 S. W., 673; *Tennessee C., I. & W. R. Co.* v. *Linn,* 123 Ala., 112, 26 South., 245, 82 Am. St. Rep., 108; *Sage* v. *Rudnick,* 67 Minn., 362, 69 N. W., 1096; *Allen* v. *Mansfield,* 82 Mo., 688; *Martin* v. *Martin,* 76 Neb., 335, 107 N. W., 580, 124

Am. St. Rep., 815, 14 Ann. Cas., 511; *I. C. R. R. Co.*
v. *Wakefield,* 173 Ill., 564, 569, 50 N. E., 1002; *Carroll*
v. *Rabberman,* 240 Ill., 450, 452, 88 N. E., 995; *Riggs*
v. *Riley,* 113 Ind., 208, 213, 214, 15 N. E., 253. Our
own case of *Phy* v. *Hatfield,* 122 Tenn., 694, 126 S. W.,
105, 135 Am. St. Rep., 888, 19 Ann. Cas., 374, holds
that a title once acquired cannot be lost by abandon-
ment. This is in accord with an intimation of the
court in the earlier case of *Boles* v. *Smith,* 1 Shan.
Cas., 149, 152.

Still assuming that Allen Hughett acquired title
to the tract before he abandoned possession of it,
defendants insist that it was essential that complain-
ant should have secured an actual possession on the
special tract, the two hundred acres, as distinguished
from a possession upon some other part of the con-
solidated tract, in order to hold the *status* of one in
possession of the particular tract, and to enable them
to proceed against an intruder in an action of forcible
or unlawful entry and detainer; that a possession
upon some other part of the consolidated boundary
would not be tantamount to, or could not be effective
as, a possession of the particular tract itself.

The complainants controvert the point of law, and
rely upon *Lieberman* v. *Clark,* 6 Cates (114 Tenn.),
117, 85 S. W., 258, 69 L. R. A., 732. That case, it
is true, reaffirms the well-recognized principle that
where there is an actual possession, *pedis possessio,*
on any part of a tract of land, under a paper defining
boundaries, that possession is extended by construc-

tion of law to every part of, and throughout the boundaries expressed in the paper, spoken of in the authorities as virtual possession, or effectual possession, and that such possession is of a higher grade than the general constructive possession that attends upon title or is incident to title to land where there is no actual possession upon any part of it. But the language used by the court must, as in all other cases, be understood in the light of the facts set out in the opinion. There was no fact stated in that case indicating the existence of a conflicting title, or claim of title as to any part of the land. The complainants in that case were in actual possession of a part of the land by having a tenant on it, under an instrument describing the whole tract, which the court held made a virtual or effectual possession of all. While complainant was so in possession the defendant entered, and began to cut and remove timber. The court held that complainant, having possession of all of the land, and so of all of the timber growing on it, could maintain an action of replevin for the timber removed without proving title to the land. That case was correctly decided, and the principles stated in the opinion are sound, but it has no direct bearing on the special phase of the controversy we are now considering. It did not present the case of an interference, or of interlapping conveyances or grants. The principles applicable to that subject had been long settled in our State in numerous de-

cisions of this court, and we entertained no purpose to unsettle them.

A case exactly in point, as applicable to the present controversy, is *Elliott* v. *Coal & Coke Co.,* 109 Tenn., 745, 71 S. W., 749.

The complainant in that case, having consolidated under one deed all of his lands, consisting of several distinct, but contiguous, tracts, claimed that a possession anywhere upon such consolidated holding would extend to every tract embraced, though other people owned grants to land lying within, or partly within, the general boundary. The court refused the contention, and held in that case, which was ejectment, that there must be an actual possession on some part of the special tract or parcel in dispute. The general rule long recognized and supported by numerous cases is, of course, that where there are interlapping grants or conveyances there must be an actual possession on the interlap or disputed ground in order to start an adverse holding in respect thereto. *Napier* v. *Simpson,* 1 Tenn., 448; *Talbot* v. *McGavock,* 1 Yerg. (9 Tenn.), 269; *Hightower* v. *Smith,* 7 Yerg. (15 Tenn.), 500; *Smith* v. *McCall's Heirs,* 2 Humph. (21 Tenn.), 163, 165; *Stewart* v. *Harris,* 9 Humph. (28 Tenn.), 714, 715; *Tilghman* v. *Baird,* 2 Sneed (34 Tenn.), 196, 199; *Waddle* v. *Stuart,* 4 Sneed (36 Tenn.), 534; *Creech* v. *Jones,* 5 Sneed (37 Tenn.), 631; Snoddy v. Kreutch, 3 Head (40 Tenn.), 302, 204; *Foster* v. *Grizzle & Hutchins,* 1 Cold. (41 Tenn.), 534; *Boles* v. *Smith,* 1 Shan. Cas.,

Lumber & Coal Co. v. Bass.

149, 152; *Gainus* v. *Bowman,* 10 Heisk. (57 Tenn.), 602; *Hunter* v. *Bills,* 3 Shan. Cas., 97; *Coal Creek Mining Co.* v. *Heck,* 15 Lea (83 Tenn.), 514; *Byrd* v. *Pillips,* 12 Cates (120 Tenn.), 14, 111 S. W., 1109; *Wright* v. *Hurst,* 14 Cates (122 Tenn.), 662, 127 S. W., 701.

These authorities run from our very earliest down to those of a very recent date.

The point in *Elliott* v. *Coal & Coke Co.* is that the consolidation of several tracts under one deed does not change the rule as to existing rights or claims. And manifestly so; otherwise the claimant of a small tract in a large general boundary embracing thousands of acres and extending over many miles would never know when his rights were invaded, and he might, by lapse of time, lose his land without ever having a reasonable opportunity to learn that the constructive possession incident to his title had been supplanted by the actual possession of another, or in any way impaired. The opposite view would require the owners of land to watch the records for consolidations, and, in case of their forming, to constantly explore wide areas for adverse holdings—an insupportable burden. Moreover, having found such holding, a house, or an inclosed field, or the like, at a point remote from the particular acreage claimed by himself, it is impossible to see how he could insist upon its removal.

But the principles stated do not preclude one owner of several contiguous tracts from consolidating them

all under one boundary, through a proper conveyance or title paper, and thus obtaining the benefit of the rule that an actual possession upon one part of the land extends by construction of law to the full limits of the description as shown in the deed or other conveyance. Indeed, it it believed that there are numerous large tracts made up of smaller purchases, and subsequently consolidated into one tract. It would be a great inconvenience, to say the least, and more even, a hardship, if the owner should be compelled to maintain an actual seat upon the location of each of his numerous previously separate parcels as a condition precedent to his use of the inexpensive and efficient writ of unlawful entry and detained against intruders, instead of resorting to the perilous and expensive remedy of ejectment, inviting an assault on the validity of his own title. Such consolidation may be had, with the result that an actual possession at one point will extend to the limits of the boundary, in cases where there are in existence at the time no conflicting grants, conveyances, or claims; or, to state the point differently, such consolidations are always allowable and lawful, and attended by the useful incident as to extended possession above indicated, except as against conflicting grants, conveyances, or claims in existence at the date of the consolidation.

It is perceived that in the preceding discussion we have noted, in respect of the possession of the constituents of a consolidated tract, a distinction be-

tween claims in existence against any constituent of the consolidation at or prior to the date of consolidation and those originating afterwards wholly unrelated to any prior claim, holding, as concerns the latter, that the intruder has no just right to question the solidarity of the combined tract; that he must take it as he finds it; that as to him it is one and indivisible; and that as against him the owner's seat of possession upon any part of the tract will extend to the uttermost limits of the boundary. We deem it proper now to add the following observations upon the subject of possession in general and possession as a means of obtaining title under the statute of limitations:

Obviously, when we say one is in possession of a tract of land for himself alone, we mean that he is in the exclusive possession. This necessarily involves too, the thought that his possession is adverse to, and exclusive of, the claims of all other persons. But as to what constitutes possession in a given instance it is sometimes difficult to determine, owing to the existence of qualifying circumstances. But there are well-established examples in the reported cases of approved possession, these, among others: A house occupied or kept locked; a fenced field with the inclosure maintained. There are also approved precedents extending the effect of such possession to the limits of any paper writing defining boundaries, within which boundaries are found such house or inclosed field. Possession is a fact composed of act and inten-

tion. The act of a casual trespasser who enters upon land for a temporary purpose, as, for example, to hunt, or fish, is not an act of possession, because it is lacking in the purpose to seize and hold, while one who enters and builds a house, or clears and fences a field, adds to his act of entry other acts which show a purpose to appropriate the land, and so his act of entry, thus followed up, becomes an act of possession. The same thing arises in a different form where one causes to be conveyed to himself different tracts of land by distinct deeds, or by the same deed when the tracts are defined by distinct boundaries, although they adjoin. In such a case it is held that an actual possession erected upon one of the tracts is not extended by construction of law to the other. *Camp* v. *Riddle,* 128 Tenn., 294, 160 S. W., 844, Ann. Cas., 1915C, 145. The act of having the two tracts conveyed by separate descriptions indicates a purpose to hold them apart as separate tracts, and to undertake the legal consequences of that situation. So a tract once a separate whole or a distinct entity may be divided in such manner that different persons have acquired separate interests, and these separate interests may maintain a technical existence notwithstanding the apparent legal owner of all the interests is one person. Where these distinct rights remain unextinguished, possessing, it may be, only a technical potency, an obstacle persists to the extension of an actual possession on one of the former parts over all of the others, although the ownership of the whole

may have passed by operation of law into one person. Such was the case of *Stewart* v. *Harris,* 9 Humph. (28 Tenn.), 714. There it appeared that the assignee of the grantee of a tract of land of 1,000 acres sold one-half of it by metes and bounds to the ancestor of plaintiff's lessors. Afterwards the whole land was sold in a body for taxes to the defendant, who took possession by a tenant, but the possession was within that half of the original grant not sold, and did not include any part of the half owned by the plaintiff, and in controversy in the case, but of which the plaintiff had never taken actual possession. It was held that, notwithstanding the lapse of the time necessary to create the bar of the statute of limitations, the plaintiff was entitled to recover. The court, commenting on this decision in the subsequent case of *Gainus* v. *Bowman,* 10 Heisk. (57 Tenn.), 600, 603, said:

"The eastern and western moieties of the original tract of land in question became from the date of the conveyance to Stuart (in 1903) separate and distinct tracts, and the actual possession of the eastern tract by the defendant, though under a conveyance purporting to include both tracts, gave him no constructive possession of the western moiety, because there cannot be in legal contemplation a possession, either actual or constructive, of the same identical tract of land, in two adverse claimants, at the same time."

Thoroughly in line with this is the case of *Hunter* v. *Bills,* 3 Shan. Cas., 97. Both are applications of the greater, underlying principle that, when rights in dif-

ferent persons have been created as to parcels of land
by the subdivision of a larger tract, it is not within the
power of another in disregard of the rights so ac-
quired, to effect a mere legal or formal reunion of
the parts, and thereafter, by establishing an actual
possession within one of the former parts, make it
operative by construction of law on the other divi-
sions of the tract; that is, the intention of the per-
son who effects a reunion of the parts, with a view to
a subsequent possession of a single tract, is thwarted
or restrained in so far, as it invades, or seeks to im-
pair, rights of possession already in existence in
respect of the former parts. The same general prin-
ciple is operative where several tracts hitherto
separate and distinct are united under one boundary
by a conveyance appropriate to the attainment of
that result. Existing rights of third parties are not
disturbed thereby. As to them the several tracts will
be considered still separate and distinct; as to them
an actual possession upon one will not be extended
by construction to any other, notwithstanding the
concurring act and intention of the owner or claim-
ant manifested by the consolidation of several tracts
into one, and the establishing of an actual possession
within the consolidated boundary. The normal oper-
ation of such act and intention is restrained to save
rights already existing in others. But where there
are no such existing rights the effect of the consoli-
dation will be unimpaired, the several parcels of
land drawn into the formation of one larger tract

will merge into the one, and an actual possession erected at any point on the tract so formed will, by operation of law, be extended to the limits of the boundary. And even when there are such existing rights the same result will follow a consolidation as to all other persons except those who claim the existing rights. This solution is in harmony with all of our precedents, and effects a just result.

An illustration of these principles, useful to a degree, may be found in some applications of the action of ejectment as administered at the common law; that action not being as with us one wholly to try title (*Hubbard* v. *Godfrey*, 100 Tenn., 150, 47 S. W., 81), but a possessory action (KENT, C. J., in *Smith* v. *Lorillard*, 10 Johns. [N. Y.], 338, 355-357); and in many respects like our action of forcible entry and detainer, which likewise involves possession, although not title, or the latter only in an incidental way. This special phase of the matter is well presented in an excerpt which we take from the opinion of the supreme judicial court of Massachusetts in *Slater* v. *Rawson*, 6 Metc. (Mass.), 439, 445, *et seq.*, in which numerous precedents are cited and briefly quoted, viz.:

"It is objected that the defendant never had any legal possession of the land in question, because, as his possession did not amount to a disseisin, the constructive possession still continued in Jacobs, who had the legal title. This is true as between the defendant and Jacobs; for, if that is a tortious pos-

session, not amounting to a disseisin, the construc-
tive possession, as between the tort-feasor and the
party having the legal title, is considered as continu-
ing in him who has the right. But the tort-feasor
may, nevertheless, well maintain an action of tres-
pass on a writ of entry against a stranger without title
for a trespass or a disturbance of his actual posses-
sion; and the defendant in such an action cannot
defend on the ground that the plaintiff's possession
was the possession of the true owner. A party may
have a possession which is legal and valid against
one party, and not against another. A tenant at will
may maintain trespass against a stranger, although
his possession is the constructive possession of his
lessor. In an action of trespass *quare clausum fregit,*
the defendant can never plead soil and freehold in a
third person, without alleging a license from him,
because a party having actual possession, but not
the right of possession, has a good title against a
party having none.

"In *Harker* v. *Birkbeck,* 3 Bur., 1556, the plaintiffs
had possession under a third person, by virtue of an
agreement not stamped, and which therefore conveyed
no title; and it was held that the plaintiffs, having
possession, might maintain trespass against any one
having no right. Upon the same principle it has
been frequently decided that a mere intruder can-
not protect himself in his possession by setting up
an outstanding title in a stranger. On this ground
it was held in *Jackson* v. *Harder,* 4 Johns. (N. Y.),

202, 4 Am. Dec., 262, that a person, having had possession of land for eight or ten years was entitled to recover possession against a mere intruder. And in *Jackson* v. *Hazen,* 2 Johns. (N. Y.), 22, the plaintiff recovered judgment in ejectment, on a mere possessory title of three years' continuance, on the ground that a naked prior possession is a sufficient title against a mere intruder. In *Lund* v. *Parker,* 3 N. H., 50, Chief Justice RICHARDSON says: ''There is no doubt that possession of land without title, or color of title, is sufficient evidence of a seisin in the possessor to entitle him to hold the land against every person who can show no better evidence of title.' And this principle is well established in this commonwealth. In *Newhall* v. *Wheeler,* 7 Mass., 189, it was held that actual possession was *prima facie* evidence of a legal seisin, and that a stranger should not be permitted to control this evidence by proving the existence of a trust estate. In *Cutts* v. *Spring,* 15 Mass., 137, it was decided that a grantee of land from the commonwealth, who had taken possession of more land than he was entitled to hold under his grant, had a right to maintain trespass against a stranger who had entered without right. The court there say: 'It is wholly immaterial to the defendants whether the location covered more land than the terms of the grant would warrant. The plaintiffs were seised as well as possessed, in regard to every one but the commonwealth, who might or might not reclaim part

of the land located, as not conveyed.' In *Cook* v. *Rider,* 16 Pick. (Mass.), 188, it appeared that the plaintiff had no title to the *locus,* except by entry on a vacant lot, incapable of cultivation, and by driving down stakes around the exterior lines of the lot, and by erecting saltworks on a portion of the land. And it was held that the plaintiff had a sufficient possession to maintain trespass against a stranger, who entered without right. But such a possession manifestly was not a disseisin of the true owner. The same principle is laid down in *Spurr* c. *Bartholomew,* 2 Metc. (Mass.), 485, 486. So in a case decided in 1838 or 1839, *Jackson* v. *Worcester Railroad* (not reported), it was held that the demandant was entitled to recover the premises on his title by possession, although the possession was not such as would constitute a disseisin of the true owner. After this decision the tenants, on a motion for a new trial, proved that they had derived title to a portion of the demanded premises from the true owner, and as to that portion it was finally decided that the demandant had acquired no title by disseisin, and could not maintain his action.''

In accord are *Smith* v. *Lorillard,* supra, and *First Parish in Shewsbury* v. *Smith,* 14 Pick. (31 Mass.), 297. In closing the opinion in the case last cited, Chief Justice SHAW said:

''If a lawful owner in whom the legal title remains chooses to interfere and set up his legal claims, the law, in consistency with its own rules in regard to

the transmission of title, may be compelled to admit his claim. But,'' he pertinently inquires, ''if such owner, upon considerations of propriety, equity, and conscience, chooses to acquiesce, and permit the party in possession to retain that possession, notwithstanding any defect of title, by what rule of law, of equity, or sound policy can a mere stranger be allowed to interfere and by his own act violate the actual and peaceable possession of another and thereby compel him to disclose a title in the validity or invalidity of which such stranger has no interest?''

In *Hubbard* v. *Godfrey,* supra, this court, speaking through Mr. Justice McAlister, referred to some of the foregoing cases, and to others having the same bearing, and did not disapprove them as applying to a possessory action, but said they could not apply to an ejectment case in Tennessee, because under our practice such a case always involves a controversy over the legal title.

It is perceived that the consideration we have given the case before us is based up to this point on the assumption that possibly Allen Hughett had acquired title to the two hundred acres either through the tax deed made to him by Thompson and Jeffers, or under the statute of limitations operating through that deed as a color of title. The point is important, as previously intimated in reaching a conclusion on the evidence as to complainant's possession of the two hundred acres. If Allen Hughett acquired title under either method, even though he subse-

quently abandoned his possession of the land, the complainant, in order to establish possession as against his heirs at law, or claimants under that title, must show an actual entry upon and seat of possession on some part of the two hundred acres, on the principles previously stated, since his title, not lost by his abandonment of possession, but descending to his heirs at law, would remain as a conflicting claim. But if Allen Hughett never acquired any title, but only maintained possession for a series of years, less than twenty, not under color of title, then, upon his abandonment of that possession, all of his rights ceased, and nothing in respect of that land descended to his heirs, and an entry upon the land by his heirs could be of no greater moment than that of any other stranger upon land already in possession, and the complainants could show possession by showing the establishment of a seat of possession anywhere within the consolidated tract; the defendants having entered upon the land after the consolidation was effected.

Therefore the question now to be examined is whether the tax deed referred to either conveyed an estate in fee, or purported to convey such estate. We answer that it did neither. Carlinda Bowling had no title; she was only the widow of Tom Bowling who owned the land and died, on the happening of which event the title descended to his heirs. At most, she owned a dower or life interest, and she is now dead. The deed did not purport to convey an

estate in fee, but only such interest as the tax collector was authorized to pass by statute, after sale made. This was merely the interest of Carlinda Bowling. The matter is controlled by section 641 of the Code of 1858. That section declares that "the same (the deed of the collector) shall be good and effectual between the parties." Therefore, the deed purporting to convey only such interest as Carlinda Bowling had, and she not having an estate in fee, it did not purport to convey an estate in fee, and was not color of title. Of course, the tax deed, even though void, if it purported to convey an estate in fee, would be good as color of title, as shown in *Iron Co.,* v. *Schwoon,* 124 Tenn., 176, 135 S. W., 785; *Stewart* v. *Harris,* 2 Swan (32 Tenn.), 656; *Sampson* v. *University,* 2 Swan. (32 Tenn.), 600; *Love* v. *Shields,* 3 Yerg. (11 Tenn.), 405. But the deed before us had no such purport. We may add that, whatever change subsequent statutes may have made, the rule under the Code of 1858 was as we have stated it, that the sale of land for taxes assessed against the life tenant covered only his interest, and not the fee. *Stovall* v. *Austin,* 16 Lea (84 Tenn.), 700, 701, 706, 708, 709; *Ferguson* v. *Quinn,* 13 Pickle (97 Tenn.), 46, 36 S. W., 576, 33 L. R. A., 688.

Having determined that Allen Hughett acquired no interest in the land, it follows that the defendants did not, in law, enter upon the two hundred acres in controversy as his heirs at law, but only as strangers. They have therefore no right to question the con-

solidation of the several tracts into one, made before their entry, or insist that an actual possession must be shown by complainants at some point on the two hundred acres prior to their entry on it. They were simply intruders on the land without previous claim of any kind, and were bound to take the tract as they found it, one large tract of twelve thousand acres covered in one boundary. As to such intruders an actual possession upon any part of the consolidated boundary would extend to its limits, as shown in the deed defining the boundary.

The great controversy on the facts has been waged over the question whether the complainant had succeeded in showing it had an actual possession within the two hundred acres when defendants entered upon it. It is not denied, as we understand the record, that complainant has sufficient evidence showing the existence of actual possessions upon other parts of the twelve thousand acres. The chancellor seems to have found such actual possessions upon other parts of the large boundary, while the court of civil appeals found such possession within the two hundred acres. In this condition of the two holdings the defendant insists there is no concurrent finding on the question of possession, and that it remains at large for the decision of this court, while the complainant contends for the opposite view. Governed by the principles already stated, we incline to the defendant's view on this particular point; but we do not regard it as of any special moment, because an actual pos-

Lumber & Coal Co. v. Bass.

session, as we have already held, at any point within the large boundary by the complainant, at the time defendants intruded, would extend to the limits of the boundaries of the twelve thousand acres, and would justify the complainant in resorting to the writ of forcible entry and detainer to put them off.

The defendants, however, contend that, even if the evidence of the complainant as to possession on other parts of the whole tract shall prevail, still there can be no recovery, because the two hundred acres is a part of two grants to Eastland, and that the complainant has not proven an actual possession on any part of these Eastland grants. The complainant contends strenuously that such proof has been made. In the view we take of the case, on the principles already stated, the question is not material. No claimant under the Eastland grants is before the court, and defendants, wholly unrelated to these grants, cannot make the question. It is not like the defense of outstanding title in ejectment. The *rationale* of that defense in an action of ejectment is that the plaintiff in such an action must succeed on the strength of his own title, not on the weakness of that of the defendants, and in our practice must exhibit a perfect title. If the true title be outstanding in a third party, the plaintiff has failed to carry the burden which the law imposes. The rule does not apply to suits of focible entry or unlawful entry and detainer. Possession is the foundation of such an action, and the question of title, all of our cases on

the subject agree, arises only as an incidental matter. It is true we have long held, as above seen, that where there are conflicting claims of title, actual possession of a part of a whole tract, outside of the interference or conflict, will not be extended by construction to cover the point of conflict, or interlap, but that to effect the interlap the possession must be within it; yet, as we have held, this has reference only to persons claiming under such interfering title papers or interlaps, and not to strangers thereto.

However, as to the Eastland grants referred to (Nos. 21917 and 22268), we think the evidence shows that complainant's possessions, known as the Dock Bowlin possession and the Lick Cave possession and the Alf Gibson possession of part of his house, and near to it, are within the former, and that known as the Cave field possession is within the latter. Therefore, even under defendant's contention, the Eastland grants would interpose no obstacle to complainant's action.

The two possessions last mentioned also lie within the so-called Allen Hughett tract, and this fact would solve the question against defendants if there were any such tract, but, as we have found and held on the grounds stated supra that Alf Hughett's claim was not under color of title, and so did not exist when defendants entered upon the land in controversy as his heirs or tenants of his heirs, the fact is immaterial.

It is insisted that, since one Alf Gibson was complainant's tenant, the suit should have been brought in his name. It is sufficient to say on this subject that he is dead, and his heirs have been made complainants. Shan. Code, section 5118, and see section 63. In addition, as to all the land, the lessor reserved a concurrent right of possession with the tenant. There was leased to Gibson all of the cleared land "on the tract known as the Bowlin survey" with the right to take the crops therefrom, but there was imposed on him the duty of keeping in charge all of the twelve thousand acres, keeping off trespassers, keeping up inclosures, and reporting to the landlord from time to time. But the landlord reserved the right to enter upon the land, or any part of it, at any time desired, and for any uses desired. Under such an instrument the so-called tenant held possession for the owner rather in the capacity of a servant or agent than in the relation exclusively of a tenant, and the suit might well have been brought in the name of the landlord alone. At all events it was well brought in the name of both, or in the name of the landlord and the heirs of the tenant, the latter being dead. We add that Harry Bowlin, an agent of the complainants, was in charge of the lands as the immediate superior of Alf Gibson, the latter reporting to him, Bowlin also himself having oversight of the lands, and going over them from time to time to see that inclosures were kept up, and that trespassers were kept off. He was also by amendment brought

in as a party complainant in the bill along with the heirs of Alf Gibson and the complainant company. It is insisted, however, that there is no evidence that the persons mentioned as heirs of Alf Gibson were in fact such. We think the terms of the amending order preclude any inquiry upon this subject. It was so framed as to state as a fact that they were his heirs, and no objection was made to it. As to possession by servants or agents the law in this State is clear. *Jones* v. *Perry,* 10 Yerg. (18 Tenn.), 59, 81, 30 Am. Dec., 430.

On the grounds and for the reasons stated, we are of the opinion that there was no error in the decree of the court of civil appeals in this case, and it is therefore affirmed.