# BRASHEAR et al. v. CUMBERLAND CASE CO. et al.—230 S. W. (2d) 668.

Middle Section.   February 24, 1950.

Petition for Certiorari denied by Supreme Court, June 7, 1950.

204

Goodloe Warden, Jr., of Manchester, for complainants.

John A. Chumbley, of Manchester, and Strang, Fletcher & Carriger, of Chattanooga, for defendants.

HOWELL, J. The complainants filed this bill on December 28, 1946 and alleged that they were the owners and entitled to the possession of a tract of land in Coffee County, Tennessee, containing 140 acres and that the defendant Cumberland Case Company on or about August 1, 1946, took possession of a part of this land, appropriating the rents and cutting and removing valuable timber therefrom, claiming title through a deed from the codefendant Altamont Land Company. The bill prayed that complainants be put in possession of the land, that defendants' muniment of title be declared void and that they be given a decree against the defendant Cumberland Case Company for the rents and profits and the value of the trees cut and lumber removed therefrom and for damages for waste and other injuries done the land.

The defendant Cumberland Case Company filed an answer in which it denied the material allegations of the bill and denied that complainants are entitled to the relief prayed. Pro confessos were entered as to the other defendants.

The case was heard by the Chancellor upon the entire record including a number of depositions and exhibits and a written opinion and finding of facts was filed which is in part as follows:

"The complainants are the children and sole heirs at law of J. Q. Brashear, who died intestate about the year 1940, or 1941. J. Q. Brashear procured a deed dated January 24, 1906, which deed was executed by the widow and six of the seven children of George T. Sissom, purporting to convey a fee simple title to the tract of land described in the bill and containing 140 acres. This deed was filed for registration on the 28th day of December, 1946 in Note Book 'K', Page 67, of the Register's Office of Coffee County, Tennessee. Subsequently Sam Sissom, the seventh child and heir at law of George A. Sissom executed a deed to the complainants purporting to convey his undivided interest in said land, which deed was executed the 28th day of April, 1948 and filed for Registration May 8, 1948, in Note Book 'K', page 161 of the Register's Office of Coffee County, Tennessee. George T. Sissom procured a deed from E. M. Whitworth and wife V. L. Whitworth to said tract of land, which deed was dated September 23, 1876, and recorded October 6, 1880, in Deed Book 'R', Page 294 of the Register's Office of Coffee County, Tennessee.

"The foregoing constitutes complainant's chain of title.

"J. Q. Brashear paid taxes on the land from the time he acquired it in 1906 until he died and since then one of the complainants, Sam J. Brashear, has paid the taxes.

"After J. Q. Brashear acquired the land in 1906 he proceeded to cut a tract of timber located thereon, which timber was sawed at a mill located in the Southwest corner of the tract where also were erected four dwelling houses occupied by employees of Mr. Brashear, also a mill shed and a lumber shed. This operation continued for approximately three years. Also, 'ever once in a while' Mr. J. Q. Brashear would go upon the land and get some posts; and in the fall of the year he would go there and get apples from an old orchard which was on the place.

"During the life time of George T. Sissom, one Bud Fults occupied a house as his tenant, which house was located on the land and within the boundary here in dispute, 57.5 acres. This occupancy was for a period of five years.

"After George T. Sissom acquired the land in 1878 from the Whitworths, which deed was recorded in 1880 as hereinbefore stated, he proceeded to build a house on this tract of land, also a barn and cleared and cultivated some twenty or twenty-five acres. Some of the fields he cultivated were enclosed by rail fences sufficient to 'turn' stock. Some of the woodland was enclosed. Here Mr. Sissom and his wife resided for a period of more than twenty years, reared a family of seven children. Here Mr. Sissom died in 1906 and was buried in a cemetery also located on this tract of land, which cemetery is presently enclosed and maintained. Near Mr. Sissom's house, which was located somewhat in the Northwest portion of the tract, there was a spring which enclosed by

a rock house. Mr. Sissom while living there grew and cultivated crops from year to year until he died in 1906. He also had an orchard on the place.

"On the 18th day of December, 1945, a contract was had by the defendant, Cumberland Case Company of Chattanooga, Tennessee, whereby the Altamont Land Company. and Ray Millard, purported assignee of defendants Boring, sold certain timber rights. Thereafter the defendant, Cumberland Case Company cut a boundary of timber estimated at 57.5 acres located within the 140 acre tract. This timber consisted mainly of oak, poplar and hickory.

" The Court is of the opinion and finds from a preponderance of the proof that G. T. Sissom died siezed and possessed of a fee simple title to the 140 acres of land described in the bill, having acquired same by twenty years adverse possession; and that the complainants are the owners in fee of said land by virtue of the deeds executed by George T. Sissom's widow and his children and heirs at law. The Court is further of the opinion that the defendant Cumberland Case Company has unlawfully cut and removed timber from this land and is entitled to respond in damages therefor to the complainants. To this end a reference will be ordered to the Master to consider the proof on file and any other which may be necessary to establish what amount is owing in damages by defendant to complainants for its unlawful acts."

From a decree based upon this finding of facts, the defendant has appealed to this Court and has assigned errors.

From a careful examination and study of the evidence and the exhibits we cannot say that the evidence preponderates against the finding of facts by the Chancel-

lor, See Code, Section 10622. We concur with the Chancellor in his finding of facts.

The defendant insists that the Chancellor erred in holding that complainants had sufficient adverse possession to the entire tract of 140 acres to justify the relief granted when the actual possession only covered a small acreage and did not cover the 57.5 acres upon which defendant had cut timber.

In the case of Round Mountain Lumber and Coal Company v. Bass, 136 Tenn. 687, 191 S. W. 341, the Supreme Court held that to bar trespassers and intruders, possession of any part of a consolidated boundary would extend to its limits as shown by the deed defining the boundary.

In the case of Allis v. Hunt, 155 Tenn. 155, on page 167, 294 S. W. 509, on page 512 the Supreme Court said:

"In the case of Mansfield v. Northcut, 112 Tenn. 536, 80 S. W. 437, it was held that one claiming a 1,000-acre tract of mountain land under a conveyance defining boundaries, who had a house thereon occupied by a tenant, was in such possession of the entire tract as would support unlawful entry and detainer against one who entered on the tract under a hostile title; this being so held apparently without reference to the validity of plaintiff's title otherwise. And it is significant that Mr. Justice Shields, recognized as high authority on our land laws, in the course of his opinion, has this to say, particularly pertinent to the present discussion: 'Constructive possession of this nature, connected as it is with actual possession of a part of the premises, is of a higher character than that which follows the legal title. It will perfect a defective title, under the statutes of limitations, and raise a presumption of grant when held for sufficient periods of time.' "

See also State etc. v. Seals, 26 Tenn. App. 333, 171 S. W. (2d) 836.

In 2 Corpus Juris Secundum, Adverse Possession, Section 196, page 800 it is said:

"However, possession under colorable title ordinarily extends, as has heretofore been shown in Section 183a, to the exterior limits of the land described in the instrument constituting color of title, and the casual entry of a mere wrongdoer or trespasser within the land covered by claimant's color of title does not impair the latter's possession by virtue of his instrument, while, conversely, entry under color of title upon a tract of land as against a mere wrongdoer is considered entry into the whole of the tract."

In this case the Chancellor found that the complainants were seized with a fee simple title to the 140 acres involved by reason of the deeds executed by the heirs of George Sissom who had acquired the land in 1878 and lived upon it until his death in 1906. Complainants are the heirs at law of J. Q. Brashear who acquired the title from the heirs of George Sissom in 1906 and who died about 1940. Te 57.5 acres upon which defendant cut timber is a part of the 140 acres of land acquired from the Sissom heirs and the defendant was an intruder or trespasser and unlawfully cut timber upon this land. The complainant's ownership is also established by the Statute of Limitation of twenty years.

■ The possession of a part of the land covered by the deeds extends to the entire description in the deeds.

In the old case of Cannon v. Phillips, 34 Tenn. 211, the Supreme Court said:

"If, however, as in the case under consideration, the plaintiff be unable to produce the grant, or to show that

the land has in fact been granted, he may resort to the presumption of law arising from a continued uninterrupted possession for the space of twenty years. This long continued possession is regarded, in law, as evidence of title and scisin in fee, and it supplies the absence or loss of a grant.

"But in the latter case, where the plaintiff relies upon the presumption of a grant, it is no more important than in the former, where a grant is shown to exist, that the possession upon which the presumption is founded should have been a possession in the person from whom the plaintiff's assurance of title was derived, or those under whom he claimed. The effect, as respects the operation of the statute upon the plaintiff's title, will be the same, although the possession were adverse to the claim of those from whom the plaintiff's deed or other assurance was derived. Here, as in the former case, the only matter of importance is the fact of such a prior possession as is sufficient to raise the presumption. With the aid of the presumption of a grant thus arising, or upon showing the actual existence of a grant, as before stated, the party whose title has become indefeasible by force of the 1st section of the statute is in a condition to maintain ejectment, or any other form of action, for an injury to the premises.

\* \* \* \* \*

"The doctrine of presumption of title rests upon the simple fact of long-continued use and enjoyment, and requires no aid from 'color of title'. Possession of land is prima-facie evidence of title; the law supposes that it had a legal origin, and when undisturbed for the period of twenty years, it becomes, in view of the law, an assurance of title of no less force or efficacy than the actual grant whose place it supplies."

In the case of Atkinson v. Atkinson, 23 Tenn. App. 269, 130 S. W. (2d) 157, 159, this Court said:

"He may establish his legal title by deraigning title from the State, or by seven years' adverse possession under a registered color of title, where the land had been granted by the State of Tennessee, or by prescription (twenty years' actual adverse possession) when a legal title will be presumed, or by deraigning title to a common source. Scruggs v. Baugh, 3 Tenn. App. 256; Cannon v. Phillips, 34 Tenn. 211, 2 Sneed 211; Keel v. Sutton, 142 Tenn. 341, 219 S. W. 351."

In this case we are satisfied that the Chancellor reached the merits of the controversy and the assignments of error are overruled and the decree affirmed.

The case will be remanded to the Chancery Court of Coffee County for the execution of the order of reference.

The appellant will pay the costs.

Affirmed and remanded.

Felts and Hickerson, JJ., concur.