Riggs v. Riley.

No. 12,972.

## RIGGS v. RILEY.

REAL ESTATE.—*Action to Recover.*—*Adverse Possession for Twenty Years.*— Title to real estate acquired by open, uninterrupted, exclusive and adverse possession, under claim of ownership, for more than twenty years, will defeat an action in ejectment by the holder of the paper title.

SAME.—*Payment of Rent.* — *Survey.* — *Reviving Right of Original Owner.* — Neither the payment of rent for a time, nor a survey establishing a line

between adjoining owners, will defeat a title previously perfected by adverse possession for more than twenty years, nor revive the right of the original owner.

From the Henry Circuit Court.

*J. Brown* and *W. A. Brown,* for appellant.

*L. P. Mitchell, J. H. Mellett* and *E. H. Bundy,* for appellee.

HOWK, J.—In this case, errors are assigned here by appellant Riggs, defendant below, which call in question (1) the court's conclusions of law upon its special finding of facts, (2) the overruling of his motion to make such special finding of facts more specific and full, (3) the overruling of his motion for a *venire de novo,* and (4) the overruling of his motion for a new trial.

The trial court found the facts of this case substantially as follows:

On August 20th, 1838, Anne Peters entered, and received a patent from the United States conveying to her the west half of the northwest quarter of section 6, in township 17 north of range 9 east, in the district of lands subject to sale at Indianapolis, Indiana, containing 92.94 acres. She afterwards, in 1846, having theretofore married Joseph Montgomery, died intestate, leaving as her only heirs at law Joseph, Mary A., John P., Servilla, Samuel S. and Catharine Montgomery, and Elizabeth, intermarried with Charles G. Stokes. On February 15th, 1864, her said heirs executed their warranty deed to John and Josiah Hodson, conveying to them all such real estate. On February 25th, 1864, Josiah Hodson and Margaret, his wife, executed their deed conveying to John Hodson the undivided one-half of such land; and John Hodson remained the owner of all such land until his death in 1883. In partition proceedings between his heirs, at the February term, 1884, of the court below, the aforesaid land was assigned and set off to plaintiff, Delilah H.

Riley, daughter of said John Hodson, as her share of all the lands of which her father died seized.

On August 1st, 1839, one Benaiah Riggs entered, and received from the United States a patent for, the west half of the southwest quarter of the same section, township and range, containing 84.76 acres. In 1866, Benaiah Riggs conveyed such land to his wife, Melissa, during her natural life, and the remainder to his children, Joshua, Margaret, Ellen, Greenbrier, George W., Mary J., Jonathan, Emma, James and Absalom Riggs, in fee simple. In 1873, Melissa Riggs died, and in the same year, but after her death, the above named grantees in the deed from Benaiah Riggs conveyed their interest in such land to defendant, Benjamin F. Riggs. The dividing line between these two tracts of land had never been marked or designated by any monument until about 1848, at which time Benaiah Riggs procured a line to be surveyed by one Balingall, who, at the request and by the procurement of said Benaiah Riggs, located the dividing line between the two tracts of land above described, and entered in the surveyor's records of Henry county a record of his survey. Balingall was at the time acting as surveyor of Henry county, and he planted a stone at the west end of said line and lettered it. At the time such survey was so made, said heirs of Anne Montgomery were the owners of the land previously owned by her, and were not residents of Henry county, and had no interest in said survey, and were not present when it was made, and were not parties thereto.

In 1849, or about that time, said Benaiah Riggs, who was then living on the land entered and owned by him as aforesaid, built a rail fence substantially on the line so surveyed and located by said Balingall, commencing at the west end of such dividing line and running thence about forty rods. The land then owned by said Montgomerys was in a wild and unimproved state, being unenclosed and unoccupied, except that a portion of said land, on the south end of said tract, had been deadened. Said fence has remained upon said line

from the time of its erection until the commencement of this suit. In 1849, or about that time, said Benaiah Riggs cleared his land up to said fence, and for each year thereafter, including 1849, he plowed and cultivated said land up to said fence and claimed the same as his own; and he conveyed the tract of land so entered by him, by the description aforesaid, to his wife and children aforesaid, in 1866. In August, 1870, one Noah Hayes, acting as deputy surveyor of Henry county, resurveyed said tracts of land, and entered upon the records of the surveyor of such county a record of such resurvey. It does not appear what notice, if any, was given of this survey, or who were present and participated therein.

Melissa Riggs, widow of said Benaiah, who was in possession of said land in virtue of her life-estate therein, continued to occupy such land up to the fence built by said Benaiah Riggs as aforesaid until a short time after said survey was made by Noah Hayes and up to her death. After she died, and defendant became the owner of the land by the conveyance aforesaid, he, during 1873 and 1874, paid said John Hodson a part of the crops raised on the land between such fence and the line established by Noah Hayes south of such fence and the line established by said Balingall, as rent for the use and occupation of said strip of ground. Since 1874 defendant has not paid rent for such strip of ground, and has continued to hold and occupy the same, and claimed to be the owner thereof in his own right. Benaiah Riggs and those claiming under him have continuously and uninterruptedly occupied said strip of ground up to said fence, claiming to be the owners thereof, and claiming said fence to be the dividing line between said lands, with the exception of the years 1873 and 1874, aforesaid, during which years defendant paid rent for said strip of ground as aforesaid.

In April, 1884, plaintiff procured the county surveyor of Henry county to survey said dividing line between the lands above described, and served notice on defendant of the time when said survey would be made. Said county surveyor did

survey and locate said line, and enter said notice, and his proceedings thereunder, and his said survey of said lands, of record in the record of surveys of Henry county, on the 30th day of March, 1885. Said survey has not been appealed from.

Upon the facts found as aforesaid, the court stated the following conclusion of law:

"I conclude, as a matter of law, that the law upon the foregoing facts is with the plaintiff, and that she is entitled to recover possession of the lands in controversy, extending to the dividing line between said lands, as located and established in and by the last survey, above mentioned, of the county surveyor of Henry county.

(Signed)    "MARK E. FORKNER, Judge."

Over defendant's exceptions to such conclusion of law, and his several motions to make the special finding of facts more specific and full, for a *venire de novo* and for a new trial, the court rendered judgment that plaintiff recover of defendant the real estate in controversy, and her costs in this action expended.

Plaintiff sued in ejectment to recover the possession of a strip of land 5 rods and 16 links in width and 60 rods in length of the tract of land first described in the special finding of facts.

The facts found by the trial court show very clearly that plaintiff has a complete paper title to the strip of land described in her complaint. We are of opinion, however, that the court's conclusion of law in plaintiff's favor is not authorized by the finding of facts, and can not be sustained. The question for decision in this case was not, where is the true dividing line between the two tracts of land described in the special finding of facts? If that had been the question for decision, the last survey made by the county surveyor, which seems to have been the only one made in conformity with the requirements of our statute, would have been at least *prima facie* evidence, and, if not appealed from, may become

conclusive evidence of the true location of such dividing line, as between the parties to such survey and all persons claiming under them.   Section 5955, R. S. 1881;   *Herbst* v. *Smith*, 71 Ind. 44.   ◦

Upon the issues joined in this cause the question for decision was this:  Is plaintiff the owner and entitled to the possession of the strip of land in controversy?  Upon this question the plaintiff had, of course, the burden of the issue, and could only recover, if she recovered at all, upon the strength of her own title; and the weakness of defendant's title, or his want of title, would afford her no ground of recovery. *Castor* v. *Jones*, 107 Ind. 283.

The facts found by the trial court clearly show, we think, that defendant owned and held possession of the strip of land described in the complaint herein by and under a perfect title equal in all respects to a conveyance in fee, notwithstanding the chain of plaintiff's paper title thereto was apparently unbroken.  Thus, the court found as facts that from 1849 down to 1873, a period of twenty-four years, Benaiah Riggs, and those claiming under him, had continuously and uninterruptedly occupied said strip of ground up to the fence, claiming to be the owners thereof, and that such fence was the dividing line between said tracts of land; that in 1849 said Benaiah built said fence and cleared the land up to said fence, and for each year thereafter, including 1849, he plowed and cultivated said strip of land up to the said fence, and claimed the same as his own.   These facts show such an actual, open, continuous, uninterrupted, exclusive and adverse possession of such strip of land for more than twenty years as extinguished the title thereto of those under whom plaintiff claims, and conferred an absolute and perfect title to such land in fee simple upon Benaiah Riggs and those claiming under him. *Bowen* v. *Preston*, 48 Ind. 367; *Roots* v. *Beck*, 109 Ind. 472, and cases there cited; *State* v. *Portsmouth Savings Bank*, 106 Ind. 435.

The further fact found by the court, that in the years 1873

and 1874 defendant paid rent for such strip of land to John Hodson, would not operate to defeat the defendant's title, nor to convey to Hodson any new title or to revive his former title to such land. *School District, etc.,* v. *Benson,* 31 Maine, 381; *Roots* v. *Beck, supra.* In truth, the case made by the special finding of facts, as it seems to us, lends no support whatever to the court's conclusion of law thereon. It can not be correctly said that the survey made in April, 1884, thirty-five years after Benaiah Riggs built his fence and cleared and plowed the land in controversy, had any effect to defeat the title to such land which he and those claiming under him had acquired by an adverse possession of the land for more than twenty years, or to confer on the plaintiff herein any title to such land.

In *Cleveland* v. *Obenchain,* 107 Ind. 591, the court said : "A land-owner who submits to a survey does not by so doing lose any of his land. In submitting to a survey he does not surrender any valid title that he may have, no matter how it may have been acquired. In not objecting to a survey he does not put himself in the position of surrendering his land, or any part of it."

We are of opinion, therefore, that the trial court erred in its conclusion that the law of this case, upon the facts found, was with the plaintiff, and that its conclusion of law ought to have been a finding for defendant.

The judgment is reversed, with costs, and the cause is remanded, with instructions to the court to re-state its conclusion of law in accordance with this opinion, and render judgment accordingly.

Filed Jan. 27, 1888.