## DAVIS v. WAGGONER.

[No. 6,204. Filed January 17, 1908. Rehearing denied June 12, 1908.]

1. ADVERSE POSSESSION.—*Surveys.*—*Title.*—Where adjoining land-owners occupy farms which had been separated by a partition fence for forty years, each farmer having treated such fence as upon the true dividing line, and by a survey, requested by both parties, the line described in the deeds was found to be different, the title of the parties to the lands extending to the partition fence had become vested by adverse possession, and such survey did not affect same. p. 116.

2. SAME.—*Title.*—*Common Grantors.*—*Special Findings.*—Where the complaint and the special findings fail to show that the land in dispute was ever conveyed by appellant to appellee or any grantor of appellee, a misapprehension existing as to the true boundary line, the principle of adverse possession does not apply, and the appellee cannot claim title by reason of the fact that appellant was his remote grantor of adjoining land, erroneously supposed by appellee to contain the land in dispute. p. 120.

3. SAME.—*Title.*—*Surveys.*—*Appeal.*—A survey, unappealed from, has no effect upon title gained by adverse possession. p. 121.

From Monroe Circuit Court; *James B. Wilson*, Judge.

Suit by John Davis against Samuel Waggoner. From a decree for defendant, plaintiff appeals. *Reversed.*

*John R. East* and *Rufus H. East,* for appellant.

*Joseph E. Henley* and *J. B. Fields,* for appellee.

COMSTOCK, J.—John Davis brought this suit against Samuel Waggoner to quiet title to a strip of land and to obtain possession thereof. The court made a special finding of facts, stated conclusions of law and entered a decree in favor of appellee.

It is assigned that the court erred in the first and second conclusions of law.

The complaint upon which the cause was tried alleges that the plaintiff was the owner in fee simple and entitled to the possession of certain land (describing it) ; that the defendant has unlawfully kept the plaintiff out of possession of said land for a period of one year last past, to the damage of plaintiff in the sum of $100. The prayer is for possession and $100 damage.

The second paragraph of complaint alleges the ownership of the same land by plaintiff, and that defendant had set up an unfounded and unjust claim, adverse to plaintiff, to said land, and the possession thereof, which was without right, and he asks that title thereto be forever quieted in him.

With other facts found by the court, were the following: The land described in plaintiff's complaint was owned in fee simple, prior to 1863, by John Davis, the father of the plaintiff in this suit, who was also the owner of the land which is now owned and occupied by the defendant as · well as other lands surrounding the lands in dispute. About 1863 said John Davis, father of plaintiff herein, died, and plaintiff herein, being one of the heirs of said John Davis, executed his deed and conveyed the land now owned and occupied by defendant herein, adjacent to and adjoining plaintiff's land along the east, to one Langdon, and said Langdon deeded said land to the defendant herein. Some time during the lifetime of said John Davis, father of plaintiff herein, and more than forty years before the filing of the complaint in this suit, there was erected a fence along the

east side of the land described in the complaint, and said fence has been regarded as the dividing line between the lands of defendant and plaintiff ever since that time until the year 1900. For more than thirty years prior to the summer of 1903 the plaintiff and defendant and defendant's grantors recognized and believed said fence to be the dividing line between said lands, the plaintiff all the time claiming to own, and cultivating and holding possession of, the land on the west side of said rail fence, and the defendant and his grantors claiming to own, and cultivating and holding possession of, the land on the east side of said rail fence. During August, 1903, the defendant took possession of the land in dispute and partly fenced the same in, and has cultivated and held possession of it from that time to the present time. The plaintiff at the time of filing his suit was not in possession of said land and had not been in possession for more than a year before the filing of said suit. The plaintiff herein never claimed or wanted to claim ·any of the land which was not his, and never had any intention of claiming any of the land which rightfully belonged to the defendant herein. More than thirty years before the bringing of this suit the owners of the land on either side agreed to maintain such division fence; the owners of the lands on the east side to maintain the north portion and the owners on the west side to keep up the south portion of said fence, and since which agreement was entered into said fence has been maintained on such line running along the east side of the land described in plaintiff's complaint. In the year 1900, by request and order of the plaintiff, to which request and order the defendant agreed and consented, the surveyor of Monroe county, Indiana, made a survey of the lands of plaintiff and defendant, by which survey it was found that the true line was some rods west of the line marked by said rail fence. The plaintiff continued in possession of the lands on· the west side of said fence and the defendant continued in possession of the.

lands on the east side of said fence until August, 1903, at which time the rail fence was removed, and defendant went upon said land mentioned and described herein and erected a fence along and on the line between the lands of plaintiff and defendant as found by said survey, which enclosed a portion of the west side of said land, and the plaintiff erected a post and wire fence along the line of the old fence for a portion of the distance along the east side of said land. The land between said old rail fence and the fence erected by defendant on the line as found by said survey is the land in controversy in this cause. Said fence so erected by the plaintiff remained for a few days, when the defendant removed said post and wire fence, pulling up the posts and removing the wire to other lands owned by him. At the time the defendant went upon said lands and erected said fence in the year 1903, the plaintiff claimed to be the owner of said land, but defendant refused to give possession, and has ever since kept the plaintiff out of possession thereof. Neither the plaintiff nor defendant ever appealed from said survey made in the year 1900, by the duly authorized, elected and acting surveyor of Monroe county, and said survey stands as made by said surveyor. The plaintiff did not commence his suit to quiet title to this land until more than three years had elapsed after the making of said survey in 1900. The defendant herein, for the last twenty-two years, had owned and been in possession of land adjoining on the east the land in dispute herein. Neither plaintiff nor defendant knew the true line between the lands, but regarded the old fence as the dividing line, and said survey was agreed upon by them for the purpose of determining the true line.

In its conclusions of law the court finds that the law is with the defendant, and that he is entitled to recover costs.

Did appellant have such possession of the land in question as gave him title in fee simple?

There was in the conduct of the plaintiff as thus described the exercise of such dominion over the premises as constituted adverse possession.

The doctrine is declared in *La Frombois* v. *Jackson* (1826), 8 Cowen *589, *618, 18 Am. Dec. 463, and quoted approvingly in *Dyer* v. *Eldridge* (1894), 136 Ind. 654, 659, and in *Logsdon* v. *Dingg* (1904), 32 Ind. App. 158, as follows: ''Every possession, then, is adverse, and entitled to the peaceful and benignant operation and protecting safeguard of the statute, which is not in subservience to the title of another, either by a direct acknowledgment of some kind, or an open or tacit disavowal of right on the part of the occupant; and it is in the latter case only that the law adjudged the possession of one to the benefit of another.'' *Rennert* v. *Shirk* (1904), 163 Ind. 542; *Pittsburgh, etc., R. Co.* v. *Stickley* (1900), 155 Ind. 312; *Webb* v. *Rhodes* (1902), 28 Ind. App. 393; *Burr* v. *Smith* (1899), 152 Ind. 469.

Appellant and appellee, as adjoining owners, maintained the division boundary fence. Appellant occupied and claimed to own the land west of said fence, thus claiming that the fence was the boundary line, and making his possession adverse. *Logsdon* v. *Dingg, supra; Webb* v. *Rhodes, supra; Dyer* v. *Eldridge, supra; Richwine* v. *Presbyterian Church* (1893), 135 Ind. 80; *Wingler* v. *Sampson* (1884), 93 Ind. 201; *Brown* v. *Anderson* (1883), 90 Ind. 93. The line thus established should be held to be the true line. *Palmer* v. *Dosch* (1897), 148 Ind. 10; *Webb* v. *Rhodes, supra; Logsdon* v. *Dingg, supra.*

Upon the facts found and under the decisions cited appellant held title to the land in dispute by adverse possession, a title which he was not deprived of by the survey. This is the controlling question.

The decree is reversed, with instructions to the trial court to restate the conclusions of law, and enter a decree in favor of appellant.

## On Petition for Rehearing.

RABB, C. J.—The appellee earnestly urges in his petition for rehearing that the court in deciding this case failed properly to grasp the·question presented by the record, and in its decision proceeded upon an erroneous theory, his contention being that the special findings affirmatively show that the appellant is appellee's remote grantor of the premises in dispute, and that hence the statute of limitations does not run in favor of appellant as against appellee's right to the land, and that appellant cannot acquire title to the premises as against appellee by prescription.

If the special findings did disclose that appellee held the legal title to the premises in dispute as the grantee, near or remote, of appellant, then the point urged by appellee would be worthy of serious consideration; but the difficulty arises in applying the principle asserted by appellee to the facts appearing in the special findings. It does not ·there appear that the piece of ground described in the complaint was ever conveyed by appellant to appellee, or to any other person. While the special findings disclose that appellant did convey to appellee's grantor the premises adjoining the land described in the complaint, this is as far as it certainly goes. It does not set forth a description of the land contained in the appellant's said conveyance. We might surmise from what does appear in the special findings that the appellant conveyed a tract of land to the appellee's grantor, that had for its western boundary the line running north and south through the center of the quarter section, and that the old fence referred to in the special findings was supposed by the parties to be on that line; whereas, the true line dividing the quarter section was several rods west of the fence, and threw the lands about which the parties dispute in the east half of the quarter section. The complaint, however, expressly described the land that

is in controversy here as being' in the west half of the quarter section, and therefore, if what we surmise was properly inferable, the decree could 'not be sustained, because the description of the premises in the complaint would not fit the premises about which there was a dispute between the parties.

The case was evidently tried and decided upon the theory that the survey was conclusive between them, no appeal having been taken therefrom, and in this view the court below erred.

Petition for rehearing overruled.