FORT WAYNE SMELTING AND REFINING WORKS
*v.* CITY OF FORT WAYNE ET AL.

[No. 27,036. Filed April 28, 1938. Rehearing denied September 27, 1938.]

*Vesey, Shoaff & Hoffman,* and *John D. Shoaff,* for appellant.

*Walter Helmke, Guy H. Leonard,* and *Douglas & Helmke,* for appellees.

TREMAIN, J.—This was an action by the appellant against the appellees to quiet its title to, and recover possession of, the following described real estate in Allen County, Indiana, to wit:

"That part of the east part of the southeast quarter of Section 1, Township 30 North, Range 12 east, which lies on the north side of the Maumee River, beginning at the intersection of the west side of Anthony Boulevard, in the City of Fort Wayne, said county and state, with the north line of the Maumee River, thence north on the west line of Anthony Boulevard, 9.61 chains to a point 6 feet north of the south line of Lot 660 Lakeside Park Addition to the city of Fort Wayne; thence west 3.51 chains to the Maumee River thence south,

southeasterly along said river to the place of beginning, containing two (2) acres more or less."

To this complaint the appellees, City of Fort Wayne and Mary B. Wichman, filed an answer in general denial. The other appellee filed a disclaimer. In addition to the answer in denial the first named appellees filed a cross-complaint in four paragraphs, the first paragraph alleging their ownership and asking that the title to said real estate be quieted in them. The second paragraph of cross-complaint, in addition thereto, alleged that the appellant did not, within fifteen years immediately following June 22, 1901, being the date of the accrual of their cause of action, bring any action to quiet title to the real estate described herein; that thereby the statute of limitation had run and any title the appellant may have had had lapsed and become null and void.

The third paragraph of cross-complaint adopted all the allegations of the first two paragraphs, and further alleged that the appellees had been in full, actual, visable, open, notorious, exclusive, hostile, and continuous possession under claim of right of the lands described in the complaint, and had paid the taxes assessed for a period of more than twenty years; and that appellant's right or claim thereto was null and void.

The appellees' fourth paragraph of cross-complaint adopted all the allegations of the first three paragraphs, and further alleged that, prior to June 22, 1901, August I. Didier, brother of the appellee Mary B. Wichman, was the owner in fee of the real estate described in the complaint and cross-complaint; that on that date he conveyed certain other real estate to Maurice Goldberger; that in drawing said deed of conveyance the scrivener, by error, inserted the following description: "and that part of east part of south east ¼ of Section 1, Township 30 North of Range 12 east, which lies on the North side of Maumee River;" that it was the intention of said

Didier to convey 7.30 acres lying on the south side of the Maumee River; that the part inserted therein and last above described contained two acres; that said deed of June 22, 1901, contained the following stipulation: "this deed intended to describe and convey all the land owned by the grantor lying south and west of the Maumee River and the island in said River, and set apart to him in partition of the lands formerly owned by by his father, Francis Didier, now deceased;" that it was never the intention to convey to Goldberger the real estate lying north and east of the Maumee River, but to convey only the 7.30-acre tract lying south and west of the river; that thereafter, on July 3, 1902, said August I. Didier conveyed the two-acre tract to his brother Stephen B. Didier, who reconveyed it to August I. Didier, who then conveyed it to Ferdinand T. Wichman and Mary B. Wichman, who in turn conveyed the entire two-acre tract to the City of Fort Wayne, with the exception of a building lot reserved in them.

The cross-complaint further alleged that the land was described as two acres on the east side and 7.30 acres on the west and south side, as shown in a deed by one Orff to Francis Didier, father of August I. Didier, on October 30, 1882; that, on the death of the father, the commissioners in partition described it in the same manner; that the deed to Goldberger specifically stated that 7.30 acres were being conveyed, and that the conveyance intended to cover land on the west and south side of the river; that the deed from Goldberger to the appellant stated that it was intended to convey the land conveyed to Goldberger.

Appellees asked that their title be quieted and the claim of the appellant be declared null and void. Answers in general denial were filed to the cross-complaint.

The facts alleged in the fourth paragraph of cross-complaint clearly show that both appellant and appellees

claim through a common remote grantor, August I.
Didier. The appellant claims under the deed by Didier
to Goldberger, executed in 1901. The cross-complain-
ants rely upon a deed executed by August I. Didier in
1902 and subsequent conveyances. The cause was tried
by the court. Upon request, the court filed special find-
ings of fact and stated its conclusions of law thereon.

The findings of the court recited that, prior to May,
1899, Francis Didier was the owner of 7.30 acres located
on the south and west side of Maumee River; that he
owned a two-acre tract located on the east and north
bank of the Maumee River; a complete description of
both tracts is given; that the two-acre tract is the real
estate now in dispute, which disputed part is described
in the Goldberger deed as that part of the east part of
south east ¼ of Section 1, Township 30 North of Range
12 east, which lies on the North side of Maumee River.
A more accurate description, as disclosed in conveyances
both before and subsequent to 1901, and in the plead-
ings, described the two-acre tract as follows:

> "Beginning at a point on the East line of Section
> One (1) in Township Thirty (30) North Range
> Twelve (12) east on the north bank of the Maumee
> River 8 chains and 98 links north of the North line
> of Wayne Street in the city of Fort Wayne, thence
> North on the East line of said section 9 chains and
> 60 links, thence west three chains and 50 links to
> the Maumee River, and thence South East along
> said River to the place of beginning containing two
> acres."

The findings recite a complete history of convey-
ances covering a period of more than 50 years in which
the two parcels of real estate are specifically described;
that after the death of Francis Didier, partition of his
real estate was had by his heirs; that the commissioners
in partition set off to August I. Didier, with other real
estate, the 7.30 acres, together with the two-acre tract,
describing them separately; that, when August I. Didier

conveyed to Goldberger, both tracts were included in the deed but described as containing 7.30 acres on the south and west side of the river; that when Goldberger conveyed to the appellant, he used the description contained in the deed to him by August I. Didier. In 1902 August I. Didier conveyed the two-acre tract to his brother, describing it by metes and bounds. The subsequent deeds to the grantees of the two-acre tract used the same metes and bounds description.

The court found that Mary B. Wichman, daughter of Francis Didier, had lived in Fort Wayne continuously since 1900, and since the Fall of 1924 had lived continuously in a residence built on her part of said two-acre tract to the date of the trial; that from 1902 to 1923 the two-acre tract in dispute was vacant and unenclosed, except for a barrier of three or four boards nailed to posts, being in all ten feet long and four feet high, constructed by Ferdinand Wichman during the period from 1902 to 1923 for the purpose of preventing the public from using the passageway leading across the two-acre tract; that the land was susceptible to cultivation for farm and garden purposes, but was not cultivated except on one occasion when a small portion was rented to a tenant by the Wichmans; that the land was listed on the tax duplicates in the names of the appellees from the year 1903 until the filing of the suit; that the Wichmans paid all the taxes thereon until the sale to the City of Fort Wayne; that in addition to the regular taxes they paid special assessments for sidewalks, street improvement, wall, sewer, trees, and lamp posts, aggregating more than $800; that they performed work upon the real estate and caused the weeds to be cut; that the residence built by Wichman in 1924 cost $6,200; that the passageway mentioned above was a mud road along the bank of the river, which the public had been accustomed to use until 1903, when the aforesaid barrier was built.

After a portion of the tract was purchased by the City of Fort Wayne, it took care of the property by having the weeds and grass cut, shrubbery and flowers planted, and other work done to beautify the premises. During all the time the appellees occupied the premises no one disputed their title or ownership. They had no notice that appellant claimed title until the suit was filed. At that time Mr. Wichman was dead and Mrs. Wichman had never heard of appellant. Mrs. Wichman and her 41-year-old son who lived with her never knew any other person claimed title or ownership to the land in question. There was and is a dam across the Maumee adjacent to the property in dispute, the east end of which rests upon the property. On the east end of the dam and upon the property in dispute there was a hydro-electric plant constructed by the City of Fort Wayne during the years 1923-1925 at a cost of approximately $300,000, and is now operated by the city. The construction of the same was practically complete before the complaint was filed. During the period from 1903 to 1923 the appellant made no claim and exercised no right of supervision, ownership, or title to the premises in question.

The court, by finding No. 19, specifically found that both plaintiff and defendants traced their alleged title to the real estate to a common remote grantor, August I. Didier. The finding is that, in addition to the deed, the defendants also claim title by adverse possession for a period of 20 years. The court concluded that the defendants were the owners of the real estate in question and entitled to have their title quieted. Judgment was rendered accordingly. Appellants excepted to the conclusions of law and perfected this appeal.

It is the appellant's position that, where both appellant and appellees claim through a common remote grantor, the rule is well established in Indiana that

the second grantee of a common grantor, and those in privity with such second grantee, are conclusively estopped from asserting that their possession is adverse to the title of the first grantee. In support of this proposition the appellant cites and relies upon the following authorities: *Fite* v. *Doe* (1820), 1 Blackf. 127; *Cashman* v. *Brownlee* (1891), 128 Ind. 266, 27 N. E. 560; *Rowe* v. *Beckett* (1868), 30 Ind. 154; *Record et ux.* v. *Ketcham* (1881), 76 Ind. 482; *Ronan et ux.* v. *Meyer* (1882), 84 Ind. 390; *Jeffersonville, etc. R. Co.* v. *Oyler* (1882), 82 Ind. 394.

The authorities cited lend support to the general proposition asserted by appellant. In *Fite* v. *Doe, supra,* it is held that, where both parties claim through a common grantor, the presumption is that the possession is in accordance with the regular title, and is in the first grantee, until there is clear and positive evidence to the contrary. The appellant and his remote grantor were in actual possession of the real estate in that case.

In *Cashman* v. *Brownlee, supra,* the first conveyance by Oppy in 1854 was to the railroad company, whose successor took possession of the land. Oppy died in 1869. The land was set off in partition to Oppy's son, David, but he did not take possession. He rented the land from the railroad company. It is not claimed in that case by appellants that they have title to the land derived from any other source. It was there held that the heirs of Abraham Oppy were estopped to claim title as against their father's deed to the railroad company.

In *Ronan et ux.* v. *Meyer, supra,* the grantor remained in possession after conveyance by him, and claimed right of possession as against his grantee and successors in title. It was held he could not prevail.

These three cases sufficiently illustrate the appellant's position and state the law correctly as far as they go. None of these cases, or others relied upon by appel-

lant, go to the extent of the facts shown in the case at bar. In the case now before the court neither the appellant nor the grantor, Goldberger, was in possession of the two-acre tract at any time. They never assumed jurisdiction over it in any form. The finding of the court must be accepted as the truth under the presentation of the case in its present form.

The decisions are so numerous upon the subject of quieting title and adverse possession that it would be folly to undertake to review many of them, and would serve no helpful purpose. But concerning the rule that where a title is traced to a common remote grantor, it may be said that it, like all other rules, has its exception. This fact is pointed out in *Tolley* v. *Thomas* (1910), 46 Ind. App. 559, 566, 93 N. E. 181. The parties to that action traced, by regular line of conveyances, their title to Robert P. Rankin, as the common grantor. He executed one line of title, under which appellant claimed, by a deed prior to the deed in the chain of title through which the appellee claimed. It was argued that those claiming under the second conveyance were estopped by the first deed from asserting adverse possession on the theory that the possession of Rankin, after the first deed, was that of a tenant or trustee of the grantee, and that the same rule applied to a subsequent grantee. In discussing this question the court said:

"As a general rule, the contention of appellants in this particular is supported by reason and authority, for, as said in the case of *Fite* v. *Doe* (1820), 1 Blackf. *127, *129: 'The presumption always is, that the possession is in accordance with the regular title, until there is clear and positive evidence to the contrary.' While this doctrine is preserved in the decisions and text-books, another principle, equally well settled, and referred to in the case last cited, extends the rule and allows the inquiry as to whether that possession was hostile to the title of the grantor, and if such possession is found to be really adverse for the full statutory pe-

riod, the presumption of possession in accordance with the regular title will yield to that shown by the proof. 1 Cyc. 1040; *Stevens* v. *Whitcomb* (1844), 16 Vt. 121; *North* v. *Barnum* (1840), 12 Vt. 205; *Abbett* v. *Page* (1890), 92 Ala. 571, 9 South. 332; *Knight* v. *Knight* (1899), 178 Ill. 553, 53 N. E. 306; *Watson* v. *Gregg* (1840), 10 Watts 289, 36 Am. Dec. 176; *Reynolds* v. *Cathens* (1858), 50 N. C. 437; *Pipher* v. *Lodge* (1818), 4 S. & R. (Pa.) *310; *Burkhalter* v. *Edwards* (1855), 16 Ga. 593, 60 Am. Dec. 744; *Smith* v. *City of Osage* (1890), 80 Iowa 84, 45 N. W. 404, 8 L. R. A. 633; *Waltemeyer* v. *Baughman* (1884), 63 Md. 200; *Schwallback* v. *Chicago, etc., R. Co.* (1887), 69 Wis. 292, 34 N. W. 128, 2 Am. St. 740; *Schwallback* v. *Chicago, etc., R. Co.* (1888), 73 Wis. 137, 40 N. W. 579; *Proprietors, etc.,* v. *Springer* (1808), 4 Mass. 416, 3 Am. Dec. 227; *Mannix* v. *Riordan* (1902), 75 App. Div. 135, 77 N. Y. Supp. 357; *Pittsburgh, etc., R. Co.* v. *Stickley* (1900), 155 Ind. 312; *Davis* v. *Waggoner* (1908), 42 Ind. App. 115."

The real test, as to whether or not real estate is held adversely, is the intention of the parties, or the intention with which a party takes and holds possession. It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title that fixes the character of the entry and determines whether the possession is adverse. The rule announced in *Tolley* v. *Thomas, supra,* is well stated in 1 R. C. L. 752, §76, as follows:

"But it is well settled that a grantor of land may originate a possession adverse to his grantee, and that such possession differs from that originated by a stranger only in requiring stronger proof to sustain it. The grantor must manifest his intention to hold adversely by some unequivocal act of hostility. As a rule, continued open and notorious posession by a grantor will be deemed to be adverse where it is of such a character as to be entirely inconsistent with the rights of the grantee. Thus the grantor's entry after conveyance must be deemed to be adverse where there is no evidence that he entered for or under the grantee, but where he

acted in all respects as the sole owner, making leases, receiving rents, paying taxes, improving the property, etc."

The special findings clearly disclose that possession of the appellees was open, adverse, under claim of right, and hostile to Goldberger and appellant; that they never held possession to the two-acre tract; that the possession of the appellees was adverse, within the full meaning of that term for the statutory period; that the conclusion of the court was correct; that the appellees held by adverse possession, and under the findings were not estopped to assert their title.

Judgment is affirmed.