**Adrian KLINE and Reta Kline, Appellants-Defendants,**

v.

**F. Richard KRAMER and June Kramer, Appellees-Plaintiffs.**

No. 3–877 A 197.

Court of Appeals of Indiana, Third District.

March 19, 1979.

David V. Bent and William T. Means, Bingham, Loughlin, Means & Mick, Mishawaka, for appellants-defendants.

F. Richard Kramer and Douglas B. Altman, South Bend, for appellees-plaintiffs.

STATON, Judge.

This case involves a classic boundary line dispute between neighbors. The Kramers and Klines, adjoining landowners, filed their respective complaint and counterclaim to quiet title to the disputed stretch of land, an area approximately one (1) to four (4) feet wide and three hundred and nine (309) feet long. The Klines bring this appeal from the trial court's entry of summary judgment in favor of the Kramers.

The disputed stretch of land forms the northern boundary of the Kramer property and the southern boundary of the Kline property. Both parties claim title to the land through their predecessors-in-interest. The Klines, who acquired ownership of their property in 1972, base their claim to the disputed stretch of land on the legal description contained in their deed. The Kramers, who purchased their land in 1968, claim title to the disputed stretch of land on the theory of adverse possession. The Kramers assert that the twenty-year[1] period of possession necessary to establish adverse possession was satisfied by tacking the period of possession by the previous owners of his property, Harry and Hazel Britt.

Harry Britt testified at the hearing on Kramer's motion for summary judgment that when he purchased the present-day Kramer property in 1947, a fence existed along the northern boundary of the land. Britt maintained the fence during his period of ownership. Photographs of the fence-line were introduced into evidence at the hearing in which Britt identified old fence posts he had set in maintaining the existing fence and familiar trees which had grown in the fence-line during his tenure on the land. While Britt testified that he never contemplated that he was claiming land that belonged to his neighbor, the fence in fact described a line which ran roughly one to four feet north of and parallel to the legally-described northern boundary of his property.

Britt testified that he felt that he owned the property up to the fence line and that he used it to plant crops and pasture cattle. It was his belief that he had bought "what was inside the fence." Similarly, Britt stated that when he sold the land to the Kramers in 1968 he intended to convey to them all the land enclosed by the fence.

1. We note that the Kramers suffer from the not uncommon misconception that the possessory period necessary to acquire title by adverse possession is twenty years. IC 1971, 34–1–2–2, Ind.Ann.Stat. § 2–602 (Burns Code Ed.) reduced this common law period to ten years. IC 1971, 34–1–2–2(6) reads in relevant part: "for the recovery of the possession of real estate, within ten [10] years . . . ."

F. Richard Kramer testified that he believed that he had purchased the property up to the fence that ran along the northern edge of his acreage. In 1972, Kramer inadvertently allowed his tractor to roll through the fence, tearing out a middle portion of it. Kramer repaired the break in the fence by stretching new fencing between the remaining old fence and fence posts to the east and west of the break. This new portion of the fence was set in the exact location of the old fence, according to Kramer, who noted that the new section followed a trail which cattle had worn along the old section.

Kramer concluded his testimony by stating that he had made improvements which encroached on the disputed stretch of land, that he had no knowledge of the true boundary line until Kline had conducted a survey of the land, and that he had paid taxes on his property according to the tax receipts sent to him by the County Treasurer.

Based on these facts, as well as the affidavits on file, the trial court granted the Kramers' motion for summary judgment, finding that they had acquired title to the disputed stretch of land through adverse possession. The Klines contend that summary judgment is erroneous for the following reasons:

(1) Summary judgment was improper because genuine issues of material fact existed.

(2) The court erred in refusing to invoke equitable estoppel to bar the equitable relief (quiet title) sought by Kramer.

(3) The court erred in its finding that the Kramers had acquired title to the disputed strip by adverse possession because it was not shown that the possession of their predecessors-in-interest (Britts) was adverse, hostile, and with intent to claim title.

(4) The trial court's conclusion that the Kramers adversely possessed the property was erroneous because the Kramers did not satisfy the statutory requisite that taxes be paid on land

in order to acquire title through adverse possession.

(5) The court erred in granting summary judgment because it failed to designate those issues which it found undisputed.

We find no error, and we affirm.

## I.

### Material Facts

The Klines contend that the trial court's entry of summary judgment was erroneous because the record reveals a genuine issue as to material facts. Specifically, the Klines maintain that a dispute as to two material facts rendered summary judgment inappropriate in this instance. Those disputes asserted by the Klines in support of their contention involve a question as to the exact location of both the fence and the legally-described boundary line, and a controversy regarding whether Kramer indicated to Kline the true location of the boundary line.

■ A motion for summary judgment should be granted only when the pleadings, depositions, affidavits, answers to interrogatories, admissions on file, and testimony presented reveal no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C); *Union State Bank v. Williams* (1976), Ind.App., 348 N.E.2d 683, 685. In determining whether a genuine issue as to a material fact exists, all doubts must be resolved against the movant. *Id.*

■ Assuming *arguendo* that a genuine issue exists regarding the factual matters raised by the Klines, the resolution of those facts is not material to the disposition of this case. The trial court's entry of summary judgment was predicated on its conclusion that the Kramers had acquired title to the property through adverse possession. The ten year possessory period necessary to acquire title on that basis is a statute of limitations which runs against the titleholder. IC 1971, 34–1–2–2, Ind.Ann.Stat. § 2–602 (Burns Code Ed.). If the titleholder

fails to oust the intruder within the ten year period, title to the property vests in the intruder, assuming all other elements of adverse possession are satisfied. *Id.*

■ Here, the evidence established that the fence had existed since 1947. The disputes which the Klines maintain render summary judgment inappropriate originated after the title to the property had vested in the Britts-Kramers. The alleged dispute regarding the location of the legally-described boundary line arose from surveys conducted by Kline in 1975. The controversy surrounding the location of the fence stems from the partial destruction of the fence in 1972 and its subsequent reconstruction in 1975. And the question whether Kramer acknowledged to Kline the true location of the boundary line flows from a 1972 incident.

By the earliest of these dates, 1972, title to the disputed strip of land had already vested in the Kramers. Finding no genuine issue as to any material fact, summary judgment was appropriate here.

## II.

### Equitable Estoppel

The Klines maintain the trial court erred in refusing to invoke the doctrine of equitable estoppel to bar the equitable relief of quiet title sought by the Kramers. The Klines base this argument on a 1972 incident in which F. Richard Kramer allegedly indicated to them the location of surveyor's stakes defining the true boundary line of the properties. This acknowledgment, coupled with Kramer's silence as to his intention to claim title to the disputed stretch, constitutes a misrepresentation or concealment which should preclude the Kramers from obtaining quiet title relief, according to the Klines.

■ The doctrine of equitable estoppel is invoked when the following circumstances are present: (1) a false representation or concealment of material facts made with actual or constructive knowledge of the true state of facts; and (2) the representation is made to one who is without knowl-

edge or reasonable means of knowing the true facts with the intent that he or she will rely upon it; and (3) the second party must rely or act upon such representation to his or her detriment. *Sheraton Corp. of Am. v. Kingsford Packing Co., Inc.* (1974), 162 Ind.App. 470, 476, 319 N.E.2d 852, 856. For silence to give rise to the application of the doctrine, there must not only be an opportunity to speak, but an imperative duty to do so. *Erie-Haven, Inc. v. First Church of Christ* (1973), 155 Ind.App. 283, 292, 292 N.E.2d 837, 842.

■ F. Richard Kramer's silence regarding his "intent" to claim title cannot trigger the application of equitable estoppel in these circumstances. The Kramers had already acquired title to the strip by virtue of adverse possession. Indiana courts have held that once title vests in a party at the conclusion of the ten year possessory period, the title is not lost, abandoned, or forfeited even though the party pays rent to the titleholder (*Riggs v. Riley* [1887], 113 Ind. 208, 15 N.E. 253), agrees to a survey to attempt to find the true boundary line (*Fatic v. Myer* [1904], 163 Ind. 401, 72 N.E. 142), expresses satisfaction with a survey whose results are inconsistent with the property adversely possessed by him (*Grim v. Johns* [1916], 61 Ind.App. 514, 112 N.E. 13), or by stating that he does not claim the land and offers to buy it (*Rennert v. Shirk* [1904], 163 Ind. 542, 72 N.E. 546).

■ Nor did the Klines reveal to the trial court the manner in which they relied on F. Richard Kramer's silence and acknowledgment of the surveyor's stakes. Adrian Kline's affidavit in opposition to the motion for summary judgment merely stated he "did rely" on Kramer's acknowledgment of the surveyor's stakes as the true boundary line. Affidavits in opposition to motions for summary judgment are required to set forth specific facts showing there is a genuine issue for trial. Ind.Rules of Procedure, Trial Rule 56(E); *Walters v. Kellam & Foley* (1977), Ind.App., 360 N.E.2d 199, 204. If the party opposing summary judgment fails to disclose a genuine issue of material fact,

which would invoke the theory of equitable estoppel, the movant is entitled to summary judgment as a matter of law. *Letson v. Lowmaster* (1976), Ind.App., 341 N.E.2d 785, 788.

The trial court properly refused to invoke the doctrine of equitable estoppel under these circumstances.

### III.

### Adverse Possession

The Klines contend that summary judgment was improper because the undisputed evidence reveals the absence of the elements necessary to acquire title by adverse possession. Specifically, the Klines maintain that the Kramers' predecessors-in-interest, the Britts, whose possessory period provides the foundation for the Kramers' claim, lacked the necessary adverseness, hostility, and intention to claim title to the strip. This argument is premised largely on the testimony of both Harry and Hazel Britt that they never intended to lay claim to any land that belonged to their neighbor to the north. Accordingly, the Klines argue, the Britts held the land by mistake and lacked the adverse intent or hostility which is requisite to establishing a claim of adverse possession.

We note that in the law of adverse possession, "adverse" is synonymous with "hostile." 2 C.J.S. *Adverse Possession* § 59 (1972). So long as an occupant of another's land does not disavow his or her right to possession of the property nor acknowledge that the possession is subservient to the title held by the true owner, the possession is adverse or hostile. *Rennert v. Shirk, supra* at 549; *Davis v. Waggoner* (1908), 42 Ind.App. 115, 119, 83 N.E. 381, 383. As the Supreme Court stated in *Fort Wayne Smelting & R. Works v. City of Fort Wayne* (1938), 214 Ind. 454, 463, 14 N.E.2d 556, 560:

"The real test, as to whether or not real estate is held adversely, is the intention of the parties, or the intention with which a party takes and holds possession. It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title that fixes the character of the entry and determines whether the possession is adverse. . . ."

While it is true that the Britts did not intend to claim the land of their neighbors, the record clearly reveals that they intended to claim all the land within the parameters of the fence which ran along the northern boundary of their property. They did not recognize that their ownership was subservient to their neighbor's title, nor did they acknowledge that they had no legal right to possession of the property. In all respects they acted as the sole owner of the property, maintaining the fence and using the land in a manner consistent with its normal purposes. This evidence clearly establishes that the Britts intended to claim title to the disputed strip of land. The only mistake involved in the Britts' possession was their belief that they were merely acting in a manner consistent with their ownership rights, a fact which does not negate the conclusion that their possession was adverse. *Id.*

This uncontroverted evidence also establishes the Britts' "intent to claim title" to the contiguous strip of land, as the Klines have characterized the element of adverse possession. This element is more aptly defined as "a claim of ownership." *Penn Central Transp. Company v. Martin* (1976), Ind.App., 353 N.E.2d 474, 476. The element is satisfied by entering upon and occupying the land with the intent to hold the land as one's own. *Id.* at 477. The trial court was thus justified in finding that the Britts' possession was both hostile and under a claim of ownership.

### IV.

### Tax Requirement

The Klines contend that the trial court erred because the taxes had not been paid by the Kramers as required by statute. IC 1971, 32–1–20–1, Ind.Ann.Stat. § 3–1314 (Burns Code Ed.).

The statute requiring the payment of taxes before the consummation of adverse possession is only a supplementary element to the statute of limitations. IC 1971, 34–1–2–2, Ind.Ann.Stat. § 2–602 (Burns Code Ed.). It did not supersede the statute of limitations. *Echterling et ux. v. Kalvaitis et ux.* (1955), 235 Ind. 141, 126 N.E.2d 573. Our Indiana Supreme Court re-stated the Indiana view of adverse possession in *Echterling, supra,* by adopting its previous statement in *Craven v. Craven* (1921), 181 Ind. 553, 103 N.E. 333, 105 N.E. 41:

> "The intention is not to punish one who neglects to assert his right, but to protect those who maintained the possession of land for the time specified by the statute under claim of right or color of title."

Under the statute requiring the payment of taxes, the adverse claimant who had paid taxes for ten years would have good title against the recorded titleholder who took no action to oust the adverse claimant even though the recorded titleholder had paid taxes during the same ten year period. The intent of the legislature and the purpose of the statute is to give the recorded titleholder notice that someone is claiming an interest adverse to his.[2] This notice may be in the form of a tax refund or a tax statement that the taxes are paid. Upon receiving this notice, the recorded titleholder must take action to oust the adverse claimant within ten years or forfeit good title to the land described on the tax statement.

In *Echterling, supra,* our Indiana Supreme Court took judicial notice that the descriptions on tax statements may not be sufficient in all cases to serve as notice to the recorded titleholder that there is an adverse claimant who is claiming an interest adverse to his interest. Where the payment of taxes will not serve as notice to the recorded titleholder that someone is in possession of his land and claiming an interest adverse to his interest in the land, the statute requiring the payment of taxes is not a supplementary element of adverse possession. Boundary disputes as in *Echterling, supra,* are typical circumstances where a tax statement does not serve notice of an adverse interest. This is especially true where a boundary reference such as a fence has been erected as in *Echterling, supra,* or a structure erected over a lot line as in *Penn Central Transp. Company v. Martin* (1976), Ind.App., 353 N.E.2d 474. In these circumstances, both adjoining titleholders are paying taxes on their adjoining land and the improvements erected. The only possible notice in these circumstances may be a valid survey before or shortly after the erected improvement.

In *Echterling, supra,* where a barbed wire fence had been erected ten feet over the boundary line and all the elements of adverse possession had been satisfied except the payment of taxes, the Indiana Supreme Court held:

> "It would seem to us that, in view of the foregoing, where continuous, open, and notorious adverse possession of real estate has been established for twenty years to a contiguous and adjoining strip of land such as that here in question, and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that

2. "In 1927, in the State of Indiana, there was great agitation in the northern part of the state caused principally by 'squatters' who were obtaining original titles to lands by adverse possession. The principal complaint was to the effect that many large corporations, which owned great tracts of unoccupied lands, were paying taxes on these lands as well as being the legal title holders, and mere 'squatters' had settled all over these tracts and by 1927, these 'squatters' had obtained original titles to these lands by adverse possession. The situation called for immediate action or these corporations would lose many thousands of dollars.

"The obvious remedy to the tense situation was the passage by the Indiana Legislature in 1927 of Chapter 42 of the Acts of 1927. . .

"*The reason for this new requirement is also apparent, the further protection of the legal title holder and the greater notice afforded to him.*" (Emphasis added)

Neu, James H., *Adverse Possession in Indiana,* 16 Notre Dame Lawyer 216 (No. 3, March, 1941).

strip even though the taxes were not paid by the adverse claimant. . . . "

The holding in *Echterling, supra*, emphasizes the Indiana view of adverse possession and the practical need to cure defects in the recording of property descriptions and other defects of title. In circumstances where boundary disputes arise due to the erection of fences or other structures, the supplementary element of tax payments is inapplicable, since it does not serve as notice to the recorded titleholder that the identical described land on the tax statement is being adversely claimed by another. The erection of the fence or other structure becomes the notice to the adjoining titleholder.

The trial court did not err when it did not consider the payment of taxes as a supplementary element of adverse possession.

## V.

### Designation of Issues

The Klines assert that the trial court erred in entering its summary judgment order by failing to comply with the requirement that the court "designate the issues or claims upon which it finds no genuine issue as to any material facts." TR. 56(C). This contention is apparently based on the failure of the trial court to include within its order a section exclusively devoted to the designation of issues and material facts not in dispute.

The trial court did supplement its summary judgment order with a nine page memorandum of law. Within that well-written memorandum, the trial court summarized the uncontroverted facts, analyzed the issues raised by the Klines in opposition to the Kramers' summary judgment motion, and discussed the immaterial nature of those facts in dispute. The memorandum concluded by stating that no genuine issues as to material facts existed and that the Kramers were entitled to summary judgment on the theory of adverse possession.

For purposes of clarity, it is advisable for trial courts to specifically delineate those issues and claims upon which it finds no genuine issue as to material facts. Here, the trial court's memorandum fully discussed the issues which the Klines raised in opposition to the summary judgment motion, the facts relevant thereto, and the theory upon which it granted the Kramers' motion.

The memorandum of law was adequate to inform both the parties and this Court of the basis for the trial court's decision. *See Middlekamp v. Hanewich* (1977), Ind.App., 364 N.E.2d 1024, 1031.

Affirmed.

GARRARD, P. J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I would reverse since a genuine issue of fact exists as to the payment of property taxes upon the portion of real estate in question. IC 1971, 32–1–20–1 is clear and unambiguous. This statute requires that a person who is claiming adverse possession of real estate must show that he paid taxes upon said real estate during the time he claimed the adverse possession.

*Echterling et ux. v. Kalvaitis et ux.* (1955), 235 Ind. 141, 126 N.E.2d 573 in effect repealed by judicial decree the plain meaning of the statute. *Echterling v. Kalvaitis, supra*, should be overruled and the plain and unambiguous meaning of the statute returned to it as was contemplated by the Legislature which adopted it.