**Clarence E. FRALEY, Appellant–Defendant,**

v.

**Clarence K. MINGER and Eva Minger, Appellees–Plaintiffs.**

No. 69A01–0208–CV–315.

Court of Appeals of Indiana.

April 10, 2003.

Todd A. Richardson, Matthew S. Tarkington, Lewis & Kappes, Indianapolis, IN, Rita J. Baldwin, Zionsville, IN, Attorneys for Appellant.

Larry L. Eaton, Versailles, IN, Attorney for Appellees.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Clarence E. Fraley appeals the trial court's judgment in favor of appellees-plaintiffs Clarence K. Minger and Eva Minger on their adverse possession claim. We reverse.

### Issue

Fraley raises several issues for review, one of which we find dispositive and restate as whether the Mingers' failure to pay taxes on the property at issue is fatal to their adverse possession claim.

### Facts and Procedural History

The instant case involves a dispute over a 2.5–acre parcel ("the parcel") that is part of a 5.4471–acre tract in Ripley County ("the tract"). Truman Belew and his wife Margaret purchased the tract in 1954 or 1955, sold it, and regained title to the tract by 1963. The tract's western boundary follows the centerline of County Road 625 East; its northern boundary follows Hogan Creek; its eastern boundary follows the centerline of an abandoned road; and its southern boundary line extends westward from the southern boundary line of an adjacent property to the east owned by Fraley.

In May 1955, the Mingers acquired title to property east of the tract and north of Fraley's property. The Mingers knew that the tract was not included in their deed and believed that it was "unclaimed." Tr. at 19. Beginning in the 1960s, the Mingers and their children pastured cattle, hunted, camped, and rode dirt bikes on the tract, as well as gathered wood and sold timber from the tract. In 1972, the Mingers erected a fence on the tract along County Road 625 East. Several years later, the Mingers installed a culvert from the county road across Hogan Creek to access the tract.

In 1991, the Belews conveyed to Ripley County a right-of-way easement over a portion of the tract in contemplation of the reconstruction of the county road bridge over Hogan Creek. Truman died in 1994. In 1996, the Belews' son Melvin conveyed the tract to Fraley by guardian's deed. On October 25, 1996, the Mingers sued to quiet title to the 2.5–acre parcel, claiming that they had "openly and adversely possessed" this northern portion of the tract for more than twenty years. Appellant's App. at 13. On August 25, 1999, the trial court entered summary judgment in favor of the Mingers. In a memorandum decision, a panel of this court reversed the trial court's judgment and remanded for further proceedings. *See Fraley v. Minger*, 729 N.E.2d 614 (Ind.Ct.App. 2000). On July 16, 2002, the trial court entered judgment in favor of the Mingers and awarded them fee simple ownership of the parcel. Fraley now appeals.

### Discussion and Decision

Indiana Trial Rule 52(A) provides in relevant part,

On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

"[A] judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an

incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions." *Carmichael v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001) (citation omitted).

■■■ The statutory period for achieving adverse possession is ten years. *Ballard v. Harman,* 737 N.E.2d 411, 416 (Ind. Ct.App.2000) (citing Ind.Code § 34–11–2–11). The following elements are required to establish adverse possession: "1) actual possession; 2) which is visible; 3) open and notorious; 4) exclusive; 5) under a claim of ownership; 6) hostile to the record owner; and 7) continuous for the statutory period." *Id.* In its judgment, the trial court concluded that the Mingers had established these elements. *See* Appellant's App. at 9.

The focus of our inquiry, however, is Indiana Code Section 32–21–7–1 ("the tax statute"), which provides,

> In any suit to establish title to land or real estate, possession of the land or real estate is not adverse to the owner in a manner as to establish title or rights in and to the land or real estate *unless the adverse possessor or claimant pays and discharges all taxes and special assessments due on the land or real estate during the period the adverse possessor or claimant claims to have possessed the land or real estate adversely.* However, this section does not relieve any adverse possessor or claimant from proving all the elements of title by adverse possession required by law.

(Emphasis added.) At trial, the Mingers failed to establish that they ever paid taxes on the parcel. On appeal, they rely on *Echterling v. Kalvaitis,* 235 Ind. 141, 126 N.E.2d 573 (1955), in contending that

"[p]ayment of the taxes on the [parcel] was not required where [they] paid the taxes on their land adjacent to the [parcel]." Appellees' Br. at 8; *see also* Appellant's App. at 6 (finding by trial court that "[t]he Mingers have paid taxes on the real estate adjacent to the disputed [parcel]").

In *Echterling,* the common ownership of a quarter section of land had been separated in 1906. At that time, an old barbed wire fence ran "north and south ten feet west of the quarter-quarter section line, separating these two tracts of land and extending the full length thereof." *Echterling,* 235 Ind. at 143, 126 N.E.2d at 574.[1] In approximately 1951, when the owners of the quarter-quarter sections conducted a legal survey of the properties "in order to save future dispute as to boundary lines[,] . . . . it was thereby established that a strip of land 10 feet in width, to which the appellants [had] record title, [lay] on the appellees' side of said fence." *Id.* at 144, 126 N.E.2d at 574. The appellees "claim[ed] title by adverse possession to the 10–foot strip between the property to which they [had] record title and the old north and south fence." *Id.* The trial court found "for the appellees on their [adverse possession claim] and quieted their title to said 10 foot strip." *Id.* After our court reversed the trial court's judgment, our supreme court accepted transfer.

The *Echterling* court observed that the 1927 predecessor to the tax statute

> was enacted to halt the pernicious effect of squatters upon lands where title holders had paid taxes on lands owned by them, but where possession of parts of the land was usurped by squatters for long years without claim of title or payment of taxes. These squatters eventu-

---

1. The *Echterling* court excerpted facts from our court's opinion, found at 123 N.E.2d 465 (Ind.Ct.App.1955). *See Echterling,* 235 Ind. at 143, 126 N.E.2d at 573.

ally claimed they became seized with title through adverse possession.

*Id.* at 145, 126 N.E.2d at 575. The court further noted that "[t]he intention [of adverse possession] is not to punish one who neglects to assert his right, but to protect those who maintained the possession of land for the time specified by the statute, under claim of right or color of title." *Id.* at 146, 126 N.E.2d at 575 (citation omitted). Finally, the court stated,

The act of 1927 must be construed as being supplemental to the statute of limitations, and not as superseding it.

The court takes judicial knowledge of the fact that complete legal descriptions of real estate are not present on the tax duplicates issued by county or city treasurers. They are usually sketchy and inaccurate.

It would seem to us that, in view of the foregoing, where continuous, open, and notorious adverse possession of real estate has been established for [the statutory period] to a contiguous and adjoining *strip of land such as that here in question,* and where taxes have been paid according to the tax duplicate, although said duplicate did not expressly include that strip, adverse possession is established to that strip even though the taxes were not paid by the adverse claimant. An example might be where one has record title to Lot No. 1 and has erected a building on that lot, which, twenty years later, is found by some surveyor to be *one foot over* on an adjoining lot, No. 2—the fact that the owner of Lot No. 1 was assessed for improvements (the building) and real estate (Lot No. 1) would be sufficient to comply with the statute as to payment of taxes.

*Id.* at 146–47, 126 N.E.2d at 575–76 (emphases added, citations omitted).

Subsequent opinions of this court have expanded the *Echterling* court's "gloss" of the tax statute beyond its narrow scope. *See, e.g., Connors v. Augustine,* 407 N.E.2d 1186, 1189 (Ind.Ct.App.1980) (stating in case where appellee sought to establish adverse possession of *sixteen-acre* tract between border fence and record title boundary, "As in this case, in *Echterling* ... a fence was erected over the boundary line and all the elements of adverse possession had been established except for the payment of taxes.... Therefore, the trial court committed no error in not requiring Augustine to have paid the property taxes as an element of adverse possession in this boundary dispute."), *trans. denied; Clark v. Aukerman,* 654 N.E.2d 1183, 1187 (Ind. Ct.App.1995) ("However, our supreme court has held that this statutory requirement does not apply where the disputed area is contiguous to property owned by the adverse claimant and he has paid taxes according to the tax duplicate, even though the tax duplicate does not include the disputed strip.") (citing *Echterling*); *Williams v. Rogier,* 611 N.E.2d 189, 193 (Ind.Ct.App.1993) ("However, our courts have recognized an exception to this statutory requirement where the disputed real estate lies adjacent and contiguous to other property owned by the claimant and taxes have been paid according to the tax duplicate. In adverse possession cases where boundary disputes arise due to the erection of fences, payment of taxes for the disputed property is not considered an additional element of an adverse possession claim. The erection of a fence or other structure serves as sufficient notice to the adjoining titleholder.") (citing *Echterling* and *Connors*), *trans. denied; Rieddle v. Buckner,* 629 N.E.2d 860, 862 (Ind. Ct.App.1994) ("However, the statutory [tax requirement] does not apply here because there is a boundary dispute due to the erection of a fence.") (citing *Kline v.*

*Kramer*, 179 Ind.App. 592, 386 N.E.2d 982 (1979)).

In his dissent in *Kline*, Judge Hoffman observed that the *Echterling* court "in effect repealed by judicial decree the plain meaning of the [tax] statute" and urged that *Echterling* "be overruled and the plain and unambiguous meaning of the statute returned to it as was contemplated by the Legislature which adopted it." *Kline*, 179 Ind.App. at 603, 386 N.E.2d at 988 (Hoffman, J., dissenting). In *Rieddle*, Judge Sullivan agreed with Judge Hoffman's observation but noted that "the *Echterling* decision is directly on point with respect to [the tax statute]. Unless and until overruled by our Supreme Court, *Echterling* is binding upon us." *Rieddle*, 629 N.E.2d at 865–66 (Sullivan, J., concurring). Although we must agree with Judge Sullivan's assessment of *Echterling's* precedential effect, the emphasized language of the holding compels us to conclude that it is properly applied only in extremely limited circumstances and not in all cases involving fences and boundary disputes in which the adverse claimant has paid taxes on the adjoining property.

In the instant case, we are not concerned with a ten-foot strip of land on one side of a boundary fence or a one-foot encroachment, but rather with a 2.5–acre parcel that the Mingers knew was not part of their deed. Given this knowledge, the Mingers' erection of a fence on the parcel and their payment of taxes on the adjoining property are of no consequence. Contrary to the Mingers' contention, *Echterling* does not apply in this case, and thus their failure to establish that they ever paid taxes on the parcel as required by Indiana Code Section 32–21–7–1 must doom their adverse possession claim. We therefore reverse the trial court's judgment.

Reversed.

MATTINGLY–MAY, J., concurs.

FRIEDLANDER, J., concurs in result with opinion.

FRIEDLANDER, Judge, concurring in result.

I agree with the majority that the Mingers may not acquire title to the parcel in question through the doctrine of adverse possession, and therefore that judgment in their favor must be reversed. I do not subscribe, however, to the rationale adopted by my colleagues in reaching that result. I write separately to explain my divergent view.

First and foremost, I cannot agree with the majority's conclusion that *Echterling* is to be applied "only in extremely limited circumstances and not in all cases involving fences and boundary disputes in which the adverse claimant has paid taxes on the adjoining property." *Slip op.* at 8. Whether or not we agree with *Echterling*, it represents a pronouncement of our supreme court and we are bound to following it as written. My colleagues acknowledge as much, but then effect what I consider to be a narrowing of its scope and applicability. Inasmuch as I believe that to be beyond our province, I cannot agree with it, nor indeed with any of the majority's analysis and conclusions relative to *Echterling*.

That said, I agree that the Mingers do not have a valid claim to the disputed land under the theory of adverse possession. In order to gain title by adverse possession, a claimant must demonstrate that all of the elements of such a claim are present. *Snowball Corp. v. Pope*, 580 N.E.2d 733 (Ind.Ct.App.1991). As the majority notes, the appellate materials reflect that the Mingers knew the disputed parcel was not part of their deeded land. Thus, they knew that they did not have a valid claim of ownership. Such a claim is an essential

element of adverse possession. *See Davis v. Sponhauer*, 574 N.E.2d 292, 298 (Ind.Ct. App.1991) ("the claim of ownership must be based on some ground justifying the adverse claimant's belief that he is the owner"), *trans. dismissed.* Because the Mingers knew from the beginning that the disputed parcel was not deeded to them, they can assert no basis upon which to premise a valid claim of ownership. Upon that rationale alone, I agree that the Mingers may not attain fee simple title to the parcel through adverse possession.